[Cite as *State v. Metcalf*, 2012-Ohio-6045.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24338 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2010-CR-197 |
| v. | : | |
| | : | |
| JESSE J. METCALF | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of December, 2012.

. . . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. #0070162, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

BRYAN K. PENICK, Atty. Reg. #0071489, Bryan K. Penick Co., L.P.A., 1800 Lyons Road, Dayton, Ohio 45458
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Defendant-Appellant was convicted of aggravated robbery (deadly weapon),

murder (proximate result of aggravated robbery), and aggravated burglary (physical harm) for shooting a man in his home in the head at close range and stealing his television. Defendant-Appellant contends that he cannot be convicted of both aggravated robbery and murder because the two offenses merge as allied offenses of similar import. He also contends that he cannot be convicted of aggravated burglary because the evidence is insufficient to support the offense's trespass element and because the finding that he did trespass is against the manifest weight of the evidence. We disagree with both contentions. The judgment of conviction is affirmed.

## I. Facts

{¶ 2} Bobby Jones was sleeping in his bedroom in the house that he shared with two others. Around 2:20 a.m., Jones awoke to a noise outside but went back to sleep. At 4:30 a.m., he got up to use the bathroom. He noticed that the front door was open and closed it. Jones walked past roommate Daniel Johnson's bedroom and saw Johnson lying on the floor. Jones did not think this unusual and went back to bed. An hour later, Jones got up and found roommate Tim Alge in the kitchen. Alge said that the back screen door had been open. Jones again went back to bed. At 8:15 a.m., Jones got up, walked past Johnson's bedroom, and noticed that Johnson was still lying in the same position. Jones walked into the bedroom and noticed that Johnson's television was missing. He also noticed that the room was "kind of messed up." (Tr. 616). Jones yelled at Johnson, but Johnson did not respond. Johnson had been shot in the head at close range.

{¶ 3} Around the time that Jones first awoke, Jesse Metcalf and his cousin Danny Ray arrived at the house to buy a dime bag of weed from Johnson. Metcalf and Ray entered

the house through the back door, which was closed, but not locked. Metcalf knew right where Johnson's bedroom was. Metcalf knocked softly on the bedroom door and walked in. Ray remained just outside the open door. Across the room Ray could see a cabinet and on it a large, flat-screen television. Johnson was seated and stood when Metcalf entered. Metcalf told Johnson that he needed some weed and some crack. Johnson then leaned towards Metcalf and started whispering into his ear. One of them pushed the bedroom door part way closed. Then Ray, still just outside the door, heard a gun fire in the room.

{¶ 4} Ray ran out the back door and kept running down the street for half a block. He stopped and looked back at Johnson's house. Ray watched as Metcalf ran out the front door and into the alley across the street. Metcalf took a hit from what to Ray looked like a crack pipe. Then Metcalf ran back into Johnson's house. Not long after, Metcalf walked out of the house with a flat-screen television. Metcalf walked down the alleyway, dropping the television once on the ground.

{¶ 5} Ray had run to his aunt's house a few blocks away. Inside were Ray's aunt and Metcalf's father. Ray told them that Metcalf had done something bad. Metcalf's father left to find his son. He returned with his son and his son's girlfriend, Jasmine Brooks. Metcalf told his father that there had been an accident when he and Ray went to get some drugs. Metcalf said that there had been a struggle and the gun went off. There was also testimony at trial that earlier in the week, Metcalf had told Brooks that he was going to steal someone's television.

{¶ 6} Within two days of Johnson being found dead, police had tracked down Metcalf. Dayton Police Officer Scott Florea and several other officers went to the house where he was hiding and found Metcalf hiding under the kitchen sink. Metcalf was arrested and

brought to the police station. Detective Gary Engel interviewed him the same day. Before questioning Metcalf, Engel had talked to a man named Jack Shepherd. Shepherd told him that around 7 a.m. on the morning that Johnson was found dead, Metcalf showed up at his house with a large, flat-screen television. Metcalf told Shepherd that it was his grandmother's television and offered to sell it to him. Shepherd bought it, discovering later that the television's frame was cracked. When Detective Engel asked Metcalf about this, Metcalf said that he had not sold Shepherd a television. Also, Engel saw no injuries on Metcalf that would suggest he had been in a struggle.

{¶ 7}        Metcalf was indicted on ten felony counts. Among them were counts of murder (proximate result of aggravated robbery), R.C. 2903.02(B); aggravated robbery (deadly weapon), R.C. 2911.01(A)(1); and aggravated burglary (physical harm), R.C. 2911.11(A)(1).[1] A jury found Metcalf guilty on all ten counts. The trial court sentenced him on the above three counts.[2]

{¶ 8}        Metcalf appealed.[3]

## II. Analysis

---

[1] He was also indicted on counts of murder (proximate result of felonious assault), R.C. 2903.02(B); murder (proximate result of aggravated burglary), R.C. 2903.02(B); aggravated robbery (serious physical harm), R.C. 2911.01(A)(3); felonious assault (deadly weapon), R.C. 2903.11(A)(2); felonious assault (serious physical harm), R.C. 2903.11(A)(1); aggravated burglary (deadly weapon), R.C. 2911.11(A)(2); and having a weapon while under disability, R.C. 2923.13(A)(2). A 3-year firearm specification accompanied all but the weapon-under-disability count.

[2] The court also sentenced him on the weapon-under-disability count and one firearm specification. The other counts and specifications merged into these.

[3] Metcalf's first appointed appellate counsel filed an *Anders* brief, asserting that there were no non-frivolous errors for review. We concluded that the issue raised in the first assignment of error is non-frivolous. So we appointed new appellate counsel to brief that issue and any other non-frivolous issues.

{¶ 9}        Metcalf assigns two errors to the trial court.[4] First he alleges that the court should not have convicted him of both aggravated robbery and murder because these two offenses merge as allied offenses of similar import. Second Metcalf alleges that the court should not have convicted him of aggravated burglary because the jury's verdict is not supported by sufficient evidence and is against the manifest weight of the evidence.

## A. Allied Offenses

{¶ 10} In the first assignment of error, Metcalf contends that the aggravated robbery and murder offenses merge as allied offenses of similar import. We disagree.

{¶ 11}        "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A). The allied offenses effectively "merge" at sentencing, and the defendant is sentenced on only one of the offenses. But if the allied offenses are "committed separately or with a separate animus as to each, * * * the defendant may be convicted of all of them." R.C. 2941.25(B). In this situation, there is no merger.

{¶ 12}        There are two steps in the merger analysis. In the first step, the court must determine whether the offenses are of similar import. Offenses of similar import are "offenses of the same or similar kind." R.C. 2941.25(B). In other words, "[i]f the offenses correspond to such a degree that the conduct of the defendant constituting commission of one

[4]The day before oral arguments in this case, Metcalf moved to amend his appellate brief by adding two more assignments of error. We sustained the motion with respect to one of the proposed assignments and overruled the motion with respect to the other. We gave Metcalf an opportunity to file a brief containing an argument in support of the proposed third assignment of error. On November 14, 2012, Metcalf moved to withdraw his motion to amend, having concluded, after more detailed review of the record, that the issue raised by the proposed third assignment of error is frivolous. That motion is sustained.

offense constitutes commission of the other, then the offenses are of similar import." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 48. In the second step, the court must determine whether the offenses of similar import "were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id*. at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting). Thus offenses do not merge "[i]f the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense." *Id*. at ¶ 51.

**{¶ 13}** We have said that "it is possible to commit murder under R.C. 2903.02(B) and aggravated robbery under R.C. 2911.01(A)(3) with the same conduct." *State v. Jackson*, 2d Dist. Montgomery No. 24430, 2012-Ohio-2335, ¶ 139. The critical question here is whether Metcalf committed the two offense "separately or with a separate animus as to each," that is, whether he committed the offenses by the same conduct–one act committed with the same state of mind.

**{¶ 14}** "[W]here the force used to effectuate an aggravated robbery is far in excess of that required to complete the robbery, or where the circumstances suggest that a separate intent to kill existed, the offenses of aggravated robbery and murder do not merge." *Id*. at ¶ 140, citing *State v. Diggle*, 3d Dist. Auglaize No. 2-11-19, 2012-Ohio-1583, *State v. Ruby*, 6th Dist. Sandusky No. S-10-028, 2011-Ohio-4864, ¶ 61, and *State v. Tibbs*, 1st Dist. Hamilton No. C-100378, 2011-Ohio-6716, ¶ 48. The separate intent to kill is an element of aggravated felony murder. R.C. 2903.01(B). In *Tibbs*, the First District considered whether aggravated felony murder and aggravated robbery merged. Reviewing the evidence, the court

said that the defendant's "immediate motive" was to steal, at gunpoint, the victim's drugs. *Tibbs* at ¶ 43. The defendant ended up shooting the victim in the face and head from close range. The court found that the "evidence of the manner in which [the defendant] had shot [the victim] * * * demonstrated a specific intent to kill [the victim], separate from the immediate motive of robbing him." (Citations omitted.) *Id*. The court held that "[w]here * * * the offender's conduct demonstrated a purpose–a specific intent–to kill while, or in the course of, committing an aggravated robbery, * * * the two offenses were committed with a separate animus and thus were separately punishable under R.C. 2941.25(B)." *Id*. at ¶ 48.

{¶ 15}     In *Jackson*, we considered whether felony murder (murder as a proximate result of committing a felony) and aggravated robbery merged. In that case, the defendant entered the victim's apartment and shot him four times, once in the head at close range, and robbed him. The defendant was found guilty on (among other counts) a count of aggravated robbery (deadly weapon) and a count of felony murder (proximate result of aggravated robbery). We concluded on *Jackson*'s facts that "the trial court could have reasonably concluded that [the defendant]'s use of force exceeded that necessary to complete the robbery or that he had a separate intent to kill [the victim]." *Jackson* at ¶ 141. The circumstances, we said, in which the defendant shot the victim could be seen one of two ways. On the one hand, the defendant could have shot the victim when he lunged toward the defendant, trying to thwart the robbery. The evidence showed that for one of the shots, the defendant had his gun against the top of the victim's head. Such a degree of force, we said, suggests that it was more than the force required to rob the victim. *Id*. On the other hand, the defendant may have targeted the victim because he was a drug-dealer. The defendant "may

have assumed that [the victim] was armed and chose to use deadly force to ensure his own safety." *Id*. Under either view, we said, it was reasonable to find that the defendant's murder animus differed from his aggravated-robbery animus. In other words, "the intent to kill was separate from the intent to commit robbery." *Id*. We held, therefore, that the trial court did not err by refusing to merge the offenses of aggravated robbery and felony murder.

{¶ 16} Like in *Tibbs* and *Jackson*, the evidence in the present case allows the inference of a separate intent to kill. Metcalf pulled the trigger with the end of the barrel less than 2 feet from Johnson's head. The use of this much force was excessive. There is no evidence of an argument between Metcalf and Johnson. Nor is there any evidence of a struggle between them. Metcalf shot Johnson shortly after entering bedroom. After shooting him, Metcalf left the house and smoked crack in the alley. Only then did he go back into the house for Johnson's television. The trial court did not err by convicting Metcalf of both murder and aggravated robbery.

{¶ 17} The first assignment of error is overruled.

### B. Sufficiency and Weight of the Evidence

{¶ 18} The second assignment of error alleges that the trial court erred by convicting Metcalf of aggravated burglary because the jury's guilty verdict is not supported by sufficient evidence and is against the manifest weight of the evidence. Metcalf contends that the state failed to establish the offense's trespass element–that he trespassed in Johnson's house. Specifically, Metcalf contends that he had a privilege to enter and remain in Johnson's house. We disagree.

{¶ 19} Trespass is an element of aggravated burglary. *See* R.C. 2911.11(A).

Trespass here refers to a violation of the criminal-trespass statute. R.C. 2911.10. One way that a person commits criminal trespass is by entering or remaining on another's premises "without privilege to do so." R.C. 2911.21(A)(1). "Privilege is the distinguishing characteristic between unlawful trespass and lawful presence on the land or premises of another." *State v. Russ*, 12th Dist. Clermont No. CA99-07-074, 2000 WL 864989, *3 (June 26, 2000); *accord State v. Kilgore*, 2d Dist. Montgomery No. 17880, 2000 WL 770530, *4 (June 16, 2000) (saying that "'there is no trespass where there is a lawful, *i.e.*, privileged, entry even though the purpose in entering is unlawful'"), quoting *State v. Clelland*, 83 Ohio App.3d 474, 490, 615 N.E.2d 276 (4th Dist. 1992). The state has the burden to prove lack of privilege. *State v. Newell*, 93 Ohio App.3d 609, 611, 639 N.E.2d 513 (1st Dist.1994).

{¶ 20} "'Privilege' means an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12). A privilege may terminate or be revoked. *State v. Steffen*, 31 Ohio St.3d 111, 115, 509 N.E.2d 383 (1987). Pertinently, "permission to enter a home is deemed terminated by the act of committing an offense of violence against a person authorized to revoke the permission." 2 Katz, Martin, Lipton & Crocker, *Criminal Law*, Section 104:6 (3d Ed.), citing *id*. In a case in which the defendant walked into a home and began shooting, we said that "a strong inference arises that once the shooting started, any permission [the defendant] might have had to be in the residence was withdrawn." *State v. Hart*, 2d Dist. Montgomery No. 22448, 2003-Ohio-5327, ¶ 43, citing *Steffen* at 115. In such a situation, the termination or revocation of privilege is immediate. *Steffen* at 115 (saying that "appellant's privilege to remain * * * terminated *the moment he commenced* his assault"

(Emphasis added.)).[5] At that moment, the person becomes a trespasser. *State v. Watson*, 9th Dist. Summit No. 14286, 1990 WL 80550, *2 (June 13, 1990) ("Even assuming a lawful initial entry, it is reasonable to infer that [the defendant]'s privilege to remain on the premises terminated immediately upon the commencement of his rape attempt, and that it was at that time that appellant committed the trespass in [the victim]'s home.").

{¶ 21} Here, any privilege that Metcalf may have had to enter Johnson's house was revoked or terminated the moment he shot Johnson in the head. At that moment, Metcalf became a trespasser.

{¶ 22} The second assignment of error is overruled.

{¶ 23} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FAIN, J., concurring in the judgment, with opinion:

{¶ 24} I find it unnecessary in this appeal to determine whether, for purposes of determining whether a trespass has occurred, the privilege that a person would otherwise have to enter, and to remain upon, premises ceases the instant that the person is involved in an act of violence. The evidence establishes that Metcalf entered not only his victim's home, but

---

[5] *Compare State v. Wisecup*, 12th Dist. Clermont No. CA2004-02-014, 2004-Ohio-5652, ¶ 10-11 ("Where a defendant commits an offense against a person in the person's private dwelling, the defendant forfeits any privilege, becomes a trespasser and can be culpable for burglary. * * * Assuming, arguendo, an initial lawful entry, appellant's privilege *to remain* terminated upon the commencement of his conduct constituting gross sexual imposition." (Emphasis sic.)); *State v. Lattire*, 12th Dist. Butler No. CA2004-01-005, 2004-Ohio-5648, ¶ 29 ("Appellant maintains that [the victim] extended an invitation to 'come down.' However, when appellant attacked [the victim], the action committed withdrew any invitation to 'come down' that appellant may have received. * * * Any rational trier of fact can infer the privilege to remain on the premises was terminated when appellant threw a punch at [the victim]'s nose.").

also his bedroom, at an early hour of the morning, some time before 7:00. A reasonable jury could find, from this evidence, that Metcalf had no privilege to enter the victim's bedroom at that early hour.

{¶ 25}    Because this was a private residence, I attach no significance to the fact that Metcalf knocked on the victim's bedroom door. In responding to a knock, a person in his own bedroom in a private residence at an early hour of the morning is entitled to assume that the knocker is either a resident of the household, or a known guest. Also, the record does not establish that there was any response to Metcalf's "soft" knock on the victim's bedroom door. I conclude, therefore, that the jury could reasonably have found that Metcalf was a trespasser even before Metcalf shot the victim.

{¶ 26}    In all other respects, I concur in the opinion of this court.

. . . . . . . . . . . . .

Grady, P.J., concurring:

{¶ 27}    I agree with Judge Fain that it is unnecessary to find that any privilege Defendant had to enter the victim's residence terminated when and because he shot the victim.

{¶ 28}    Defendant was convicted of aggravated burglary in violation of R.C. 2911.11(A)(1). That section provides: "No person, by force, stealth, or deception, shall trespass in an occupied structure, * * * with purpose to commit * * * any criminal offense, if * * * [t]he offender inflicts * * * physical harm on another."

{¶ 29}    One who knowingly enters or remains on the land or premises of another, without privilege to do so, is a trespasser. R.C. 2911.21(A)(1). It was the State's burden to prove that Defendant trespassed when he entered the victim's residence.

**{¶ 30}** That Defendant was a trespasser may reasonably be inferred from the fact that the location was a private home and that Defendant neither owned it nor resided there. It may also reasonably be inferred that Defendant's purpose in entering the premises was to commit a felony by stealing the victim's television. Furthermore, the evidence is sufficient to demonstrate that Defendant entered the premises by "stealth:" the entry was surreptitious, taking place in the early hours of the morning and without any form of announcement.

**{¶ 31}** The foregoing facts did not constitute a violation of R.C. 2911.11(A)(1), however, until Defendant inflicted physical harm on the victim by shooting him. But the fact that infliction of physical harm was the final element in the offense of aggravated burglary does not logically demonstrate or result in the loss of any privilege Defendant previously enjoyed. One is never privileged to commit physical harm. In the context of an R.C. 2911.11(A)(1) offense, the matter of privilege applies to the trespass element, not to the conduct that follows.

. . . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Kirsten A. Brandt
Bryan K. Penick
Hon. Gregory F. Singer