[Cite as *State v. Albert*, 2015-Ohio-249.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-30 |
| v. | : | (C.P.C. No. 12CR10-5462) |
| Shane Albert, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on January 27, 2015

---

*Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee.

*Shane Albert*, pro se.

---

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Shane Albert, appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm appellant's convictions but remand the matter for resentencing.

## I. Factual and Procedural Background

{¶ 2} On October 14, 2005, Jatora Pruitt and her then boyfriend, Jay Bradley, were at a house located at 274 S. Dakota Avenue in Columbus, Ohio. Bradley, Pruitt, and another man, Ullman Taylor, all sold drugs out of the house. Charles Calloway was also present. He was the house's doorman and would keep people away that they did not know. Calloway left the house to run an errand. When he came back, Bradley opened the door to let him back inside. Calloway ran inside the house and yelled that someone was

shooting at him.  Bradley shot back but was shot twice.  Pruitt saw three people running away from the house but could not identify them.

{¶ 3}   Two days later, Pruitt, Taylor, and appellant were at the house discussing the shooting.[1]  Inside the house, they began to question Calloway about the shooting and who might have been involved.  Appellant and Taylor were standing over Calloway, who was sitting on a couch.  Calloway would not answer their questions so they began beating him.  Calloway still refused to answer their questions.  Appellant said that he knew how to get him to talk, so he left the room and quickly returned with a gasoline can.  (Tr. 113.)  He poured gasoline on Calloway and then Taylor lit a piece of paper on fire to intimidate Calloway to answer their questions.  The lit piece of paper then fell[2] into Calloway's lap and he became engulfed in flames.  Calloway sustained burns over 95 percent of his body and died from the massive burns and soot inhalation into his lungs.

{¶ 4}   For several years, Calloway's death remained unsolved until an officer with the Columbus Police Department's cold case unit began a new investigation.  As a result of that investigation, on October 24, 2012, a Franklin County Grand Jury indicted appellant for counts of aggravated arson, in violation of R.C. 2909.02, aggravated murder, in violation of R.C. 2903.01, murder, in violation of R.C. 2903.02, and kidnapping, in violation of R.C. 2905.01.  Each count also contained a firearm specification pursuant to R.C. 2941.141.  Appellant entered a not guilty plea to the charges and proceeded to a jury trial.

{¶ 5}   At trial, the state's witnesses testified to the above version of events.  Additionally, Janae Davis, who knows appellant because he fathered a child with her mother, testified that appellant confided to her that he was scared he might go to jail because he had poured gasoline over someone but he denied he stated the fire.  (Tr. 199.)

---

[1] Appellant and Taylor grew up together and previously had sold drugs together.

[2] Taylor, who pled guilty to a count of involuntary manslaughter arising from these events, testified that he accidently dropped the piece of paper when it started burning his hand.  Pruitt testified that he tossed it into Calloway's lap.

{¶ 6} The jury found appellant guilty of the aggravated arson, murder, and kidnapping charges (as well as the attendant firearm specifications) but not guilty of aggravated murder. The trial court sentenced appellant accordingly.[3]

## II. Appellant's Appeal

{¶ 7} Appellant appeals and assigns the following errors:

> [1.] The Appellant was denied effective assistance of counsel at all stages of the proceedings including pre-trial, trial and at sentencing.
>
> [2.] The Trial Court committed plain error, when the Court failed to resolve allied offense and notify the Appellant of the required post release control notification.
>
> [3.] The Trial Court erred by admitting unnecessary and prejudicial photographs of the victim.
>
> [4.] The verdict is against the sufficiency and manifest weight of the evidence.

{¶ 8} We address the assignments of error out of order for analytical clarity.

### A. Third Assignment of Error—The Admission of Photographs of the Victim

{¶ 9} In his third assignment of error, appellant argues that the trial court abused its discretion by admitting three photographs of Calloway. The pictures were taken during the autopsy and show significant burns to Calloway's body and face. Appellant claims the trial court erred by admitting these pictures because the probative value of such pictures was substantially outweighed by the unfair prejudice of the pictures in violation of Evid.R. 403. We disagree.

{¶ 10} The admission of such photographic evidence is subject to an abuse of discretion standard of review. *State v. Ware*, 10th Dist. No. 04AP-43, 2004-Ohio-6984, ¶ 32. When considering the admissibility of photographic evidence in a noncapital case, a trial court must use the balancing test under Evid.R. 403. Evid.R. 403(A) provides that

---

[3] Although appellant did not raise this as error, the state points out that the trial court improperly sentenced appellant for the multiple firearm specifications. We agree. Appellant was found guilty of three one-year firearm specifications and, upon the merger of those specifications, should only have been sentenced to one year in prison. The trial court sentenced him to three years. Accordingly, this matter must be remanded with instructions for the trial court to resentence him on these specifications.

"[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." *State v. Kovacic*, 11th Dist. No. 2010-L-065, 2012-Ohio-219, ¶ 29. That the photos may be gruesome does not render them inadmissible if they otherwise satisfy the balancing test of Evid.R. 403(A). *Ware* at ¶ 32.

{¶ 11} The trial court admitted three autopsy photographs of Calloway's body after concluding that the probative value of the three photos outweighed the prejudicial effect. One photo is a close-up picture of Calloway's face, another is a wider picture of his face and upper body, and another is a picture of the back of his body. The photographs illustrate the coroner's testimony with regard to the cause of death and the victim's injuries and gave the jury an appreciation for the nature and circumstances of the crime. *Ware*. The photographs were not cumulative or repetitive as each showed different areas of Calloway's burned body. Nor were they particularly gruesome, especially given the heinous nature of the crime. For these reasons, the trial court did not abuse its discretion in admitting the photographs in this case. Accordingly, we overrule appellant's third assignment of error.

## B. Fourth Assignment of Error–The Sufficiency and Manifest Weight of the Evidence

{¶ 12} Appellant argues in his fourth assignment of error that his convictions are not supported by sufficient evidence and are also against the manifest weight of the evidence. Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary,* 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11, citing *State v. Braxton,* 10th Dist. No. 04AP-725, 2005-Ohio-2198, ¶ 15. "[T]hus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Id.* In that regard, we first examine whether appellant's conviction is supported by the manifest weight of the evidence. *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, ¶ 46 (10th Dist.).

{¶ 13} The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v.*

*Thompkins*, 78 Ohio St.3d 380, 387 (1997). When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *State v. Strider-Williams*, 10th Dist. No. 10AP-334, 2010-Ohio-6179, ¶ 12.

{¶ 14} In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, we afford great deference to the jury's determination of witness credibility. *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 55. *See also State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus (credibility determinations are primarily for the trier of fact).

### 1. The Convictions

{¶ 15} Appellant was found guilty of aggravated arson, murder, and kidnapping, as well as the firearm specifications for each count. In order to find appellant guilty of aggravated arson in this case, the state had to prove that appellant, by means of fire or explosion, knowingly created a substantial risk of serious harm to Calloway. R.C. 2909.02(A). To find him guilty of murder in this case, the state had to prove that appellant caused Calloway's death as the result of committing or attempting to commit a first or second degree felony offense of violence, to wit, aggravated arson. R.C. 2903.02(B). In order to find appellant guilty of kidnapping, the state had to prove that he

restrained Calloway's liberty to facilitate the commission of a felony to wit, aggravated arson and/or aggravated murder or murder, or to terrorize or to inflict serious physical harm on Calloway. R.C. 2905.01(A)(2) and (3). Lastly, the firearm specifications for each of these offenses required the state to prove that appellant had a firearm on or about his person or under his control while committing the offenses. R.C. 2941.141.

### 2. Appellant's Argument

{¶ 16} Appellant argues that the state failed to prove that he used a deadly weapon during the commission of the kidnapping or murder. Neither of those offenses requires the use of a deadly weapon. In the interest of justice, we interpret this argument broadly to question whether the state proved the firearm specifications.

{¶ 17} While appellant did not have a gun that day, an unarmed accomplice such as appellant can be convicted of a firearm specification based on an aider and abettor status. *State v. Howard*, 8th Dist. No. 97695, 2012-Ohio-3459, ¶ 24. A person aides or abets another when he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal. *State v. Johnson*, 93 Ohio St.3d 240, 245-46 (2001). Such intent may be inferred from the circumstances surrounding the crime. *Id.* at 246.

{¶ 18} Ullman Taylor testified that he had his gun in the house when he and appellant began questioning and beating Calloway. (Tr. 166.) He placed it on the ottoman in plain view. (Tr. 166.) The men then questioned Calloway and beat him when he would not answer their questions. Appellant then left and returned with the gasoline can in order to make Calloway talk. When he again refused, appellant poured gasoline over Calloway. Taylor then lit the piece of paper which fell into Calloway's lap and ultimately led to his severe burning and death.

{¶ 19} In light of Taylor's testimony indicating his ready access to a gun during the attack on the victim, we cannot say that the jury lost its way or created a manifest miscarriage of justice in finding appellant guilty as an aider and abettor. Accordingly, appellant's convictions for the firearm specifications are not against the manifest weight of the evidence. This conclusion is also dispositive of appellant's claim that the specifications are not supported by sufficient evidence. *State v. Green*, 10th Dist. No.

11AP-526, 2012-Ohio-950, ¶ 13.   For these reasons, we overrule appellant's fourth assignment of error.[4]

## C. Second Assignment of Error—Sentencing Issues

### 1. Merger

{¶ 20} In his second assignment of error, appellant addresses two sentencing issues.   He first contends that the trial court erred by not determining that his convictions should merge for purposes of sentencing.   Appellant did not raise the merger issue at sentencing and therefore has forfeited this argument on appeal absent plain error.  *State v. Taylor,* 10th Dist. No. 10AP-939, 2011–Ohio–3162, ¶ 34, citing *State v. Sidibeh,* 192 Ohio App.3d 256, 2011-Ohio-712, ¶ 55 (10th Dist.); *State v. Elmore,* 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 127. A trial court commits plain error, however, when it imposes multiple sentences for allied offenses of similar import.  *State v. Gibson,* 10th Dist. No. 10AP-1047, 2011-Ohio-5614, ¶ 47, citing *State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31.

{¶ 21} R.C. 2941.25, Ohio's multiple count statute, provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 22} To determine whether offenses are allied and of similar import and therefore subject to merger, "the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission

---

[4] We note that appellant also argues in this assignment of error that he could not be found guilty of kidnapping and murder under the facts of this case.   His argument, however, addresses whether these offenses should have merged for purposes of sentencing, not whether the evidence supported the convictions.   We will address the merger issue in our discussion of appellant's second assignment of error.

of the other, then the offenses are of similar import." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, ¶ 48, citing *State v. Blankenship*, 38 Ohio St.3d 116, 119 (1988); *Gibson* at ¶ 48-49.

{¶ 23} If the offenses can be committed by the same conduct, then "the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' " *Johnson* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50. If the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge. *Johnson* at ¶ 51. However, if the answer to both questions is in the affirmative, then the offenses are allied offenses of similar import and will be merged. *Taylor* at ¶ 38; *Johnson* at ¶ 50.

{¶ 24} Appellant claims that his convictions for aggravated arson, felony murder, and kidnapping all should have merged for purposes of sentencing. We easily reject his claim as it relates to the merger of kidnapping and either aggravated arson or murder, because separate conduct was required to commit each of the offenses. Specifically, appellant and Taylor restrained Calloway's liberty to terrorize him by initially standing over him and beating him while he was on the couch. This conduct occurred separately from the later conduct that led to Calloway's death and, therefore, the kidnapping conviction does not merge with any of the other offenses.

{¶ 25} The merger of appellant's felony murder and aggravated arson convictions is a more complex question. The jury found him guilty of felony murder predicated on his commission of aggravated arson. R.C. 2903.02(B). It is clearly possible to commit both offenses with the same conduct and, in fact, appellant did commit both offenses with the same conduct, because Calloway died as the result of being set on fire. Thus, the offenses are of similar import. *See State v. Delawder*, 4th Dist. No. 10CA3344, 2012-Ohio-1923, ¶ 41-44 (predicate offenses to charges of felony murder are offenses of similar import). Because of that, we must next determine whether he committed the offenses with a separate animus. *State v. Diggle*, 3d Dist. No. 2-11-19, 2012-Ohio-1583, ¶ 16 (where predicate offense to felony murder charge could be committed with the same conduct, court must then determine whether offender did commit with same conduct or animus).

{¶ 26} The state argues that these offenses do not merge for two reasons. First, it argues that the force used to commit the predicate offense of aggravated arson was "far in excess" of that required to commit the offense. Indeed, some courts have rejected merger claims for this reason. *See State v. Jackson*, 2d Dist. No. 24430, 2012-Ohio-2335, ¶ 140 (citing cases). Those cases typically involve the commission of a robbery or aggravated robbery as the predicate offense to a charge of felony murder and consider whether the force used (that lead to the death) was in excess of that necessary to commit the robbery. This concept has, however, been applied to other offenses. *See State v. Whipple*, 1st Dist. No. C-110184, 2012-Ohio-2938, ¶ 38-42 (rejecting merger of discharging a firearm and felonious assault convictions). Second, the state also argues that the offenses should not merge because the circumstances suggest that a separate intent to kill existed. *See State v. Tibbs*, 1st Dist. No. C-100378, 2011-Ohio-6716, ¶ 48; *Diggle* at ¶ 17.

{¶ 27} In essence, both arguments are slightly different ways to address the ultimate issue: whether the offenses were committed with a separate animus. In considering each offense, courts look to determine whether excessive force was used to commit the underlying offense, which would indicate that the intent to kill was separate than the intent to commit the underlying offense. *See State v. Metcalf*, 2d Dist. No. 24338, 2012-Ohio-6045, ¶ 15-16; *State v. Miller*, 8th Dist. No. 100461, 2014-Ohio-3907, ¶ 47-48; *Whipple* at ¶ 42.

{¶ 28} Here, the state argues that appellant's intent to kill Calloway was separate than the intent to cause him serious harm by means of fire because the act of pouring gasoline on Calloway and then lighting him on fire was far in excess of the force needed to commit aggravated arson. We agree. Appellant did not set fire to the house. He was a participant in setting Calloway on fire. Appellant poured gasoline on Calloway's body and then Taylor (intentionally or not) ignited the gasoline. That act is far in excess of what is required to commit an aggravated arson and, given the circumstances, indicates that appellant participated in an act with a separate animus to kill Calloway. The trial court did not err when it did not merge these offenses.

## 2. Notification of Post-Release Control

{¶ 29} Appellant also argues that the trial court failed to notify him about post-release control ("PRC"). We disagree.

{¶ 30} A trial court must notify a defendant of post-release control, if applicable, at sentencing and in the court's sentencing judgment entry. *State v. Singleton,* 124 Ohio St.3d 173, 2009-Ohio-6434, ¶ 22.  Although the trial court did not orally advise appellant of post-release control, the lack of an oral advisement by itself does not render the trial court's notification insufficient. *State v. Easley,* 10th Dist. No. 10AP-505, 2011-Ohio-2412, ¶ 14-19. Indeed, this court has repeatedly found that a trial court meets its statutory obligations to notify a defendant of PRC "when its oral and written notifications, taken as a whole, properly informed the defendant of post-release control."  *State v. Boone*, 10th Dist. No. 11AP-1054, 2012-Ohio-3653, ¶ 18; *State v. Townsend,* 10th Dist. No. 10AP-983, 2011-Ohio-5056, ¶ 7.   Thus, we must consider the totality of the circumstances to determine whether the trial court properly notified appellant of PRC.  *State v. Williams,* 10th Dist. No. 10AP-1135, 2011-Ohio-6231, ¶ 23.

{¶ 31} In this case, the trial court's sentencing entry provides that "[t]he Court also notified [appellant] of the applicable period of post-release control pursuant to R.C. 2929.19(B)(3)(c), (d) and (e)."  Additionally, appellant signed a "Notice (Prison Imposed)" form on the day of his sentencing.  That form indicated a five-year period of PRC that would follow appellant's release and the possible sanctions for a violation of post-release control.  This court has found these two documents to be sufficient to properly notify a defendant of PRC even in the absence of oral notification.  *State v. Cunningham*, 10th Dist. No. 10AP-452, 2011-Ohio-2045, ¶ 18; *State v. Jordan*, 10th Dist. No. 13AP-666, 2014-Ohio-1193, ¶ 11-13.  Accordingly, the trial court properly notified appellant of PRC.

{¶ 32} For these reasons, we overrule appellant's second assignment of error.

### D.  First Assignment of Error–Ineffective Assistance of Counsel

{¶ 33} Lastly, appellant argues in his first assignment of error that he received ineffective assistance of counsel.  We disagree.

{¶ 34} To establish a claim of ineffective assistance of counsel, appellant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced him.  *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 133, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The failure to make either showing defeats a claim of ineffective assistance of counsel.  *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697. ("[T]here is no reason for a court deciding an

ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

{¶ 35} In order to show counsel's performance was deficient, the appellant must prove that counsel's performance fell below an objective standard of reasonable representation. *Jackson* at ¶ 133. The appellant must overcome the strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance. *Strickland* at 689. To show prejudice, the appellant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 204.

{¶ 36} Appellant contends that his trial counsel was ineffective for a multitude of reasons.

### 1. Alibi Defense

{¶ 37} Appellant argues that trial counsel failed to properly investigate and prepare his alibi defense. However, appellant failed to demonstrate a factual basis for an alibi defense or what trial counsel did to investigate such a defense, and the record reveals no facts supporting such a claim. Thus, no basis exists to find deficient performance by trial counsel for failure to investigate or prepare an alibi defense. *State v. Winfrey*, 2d Dist. No. 23174, 2010-Ohio-276, ¶ 12 (rejecting similar claims not demonstrated in the record); *State v. Coulverson*, 10th Dist. No. 01AP-893 (Mar. 21, 2002); *State v. Monroe*, 10th Dist. No. 04AP-658, 2005-Ohio-5242, ¶ 37 (rejecting similar claim where no facts supported a proposed alibi defense).

{¶ 38} Appellant also argues that his counsel misled the jury during opening arguments by stating that appellant was not at the scene of the crime but then did not present evidence to support that statement. Again, appellant fails to point out any evidence that trial counsel could have presented in support of an alibi defense. Nevertheless, it appears that trial counsel's trial strategy was to attack the credibility and veracity of the state's witnesses in an attempt to persuade the jury that those witnesses were lying and that appellant was not present when this crime was committed.

{¶ 39} Specifically, counsel argued in his opening statement that the state's witnesses would not be credible and that although they would testify that appellant was at

the scene for this offense, he really was not. (Tr. 21.) Trial counsel brought up various credibility concerns of each witness during cross-examination. Then, during closing arguments, counsel repeated the same argument. He argued that "[n]o one puts [appellant] at the scene except the small group of drug pushers, thieves that need to be with this case." (Tr. 306.) Counsel repeatedly reminded the jury that the state's witnesses had credibility issues, including the lapse of time without anyone saying anything to the police, their plea agreements and their inconsistent versions of events. He went so far as to call the witnesses "evil," argued that they "have no soul," and implied that they were accusing appellant of the crime to place the blame for the crime on someone else. (Tr. 310.) He concluded by stating that appellant was not there that day and that "the fleeting references that he was there for some reason or another doesn't make him there. * * * He was not there." (Tr. 312.)

{¶ 40} Based on this record, we cannot say that such a trial strategy constitutes ineffective assistance of counsel. Obviously, evidence supporting an alibi defense would have been very helpful. However, there is no indication that evidence supporting an alibi defense exists. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy had been available. *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995); *Elyria v. Bozman*, 9th Dist. No. 01CA007899, 2002-Ohio-2644, ¶ 18 (decision to attack credibility of witnesses rather than to present evidence is not ineffective assistance of counsel); *State v. Williams*, 9th Dist. No. 17727 (Sept. 25, 1996) (decision to attack credibility and not pursue other avenues of defense, while debatable, is not ineffective assistance).

### 2. Trial Issues

{¶ 41} Appellant argues that trial counsel was ineffective for failing to request a jury instruction for involuntary manslaughter. We disagree. The failure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel. *State v. Griffie*, 74 Ohio St.3d 332 (1996); *State v. Mitchell*, 10th Dist. No. 10AP-756, 2011-Ohio-3818, ¶ 52. Here, such an instruction would have been inconsistent with appellant's theory of the case.

{¶ 42} Appellant also contends that trial counsel failed to object to instances of prosecutorial misconduct during closing arguments in which the prosecutor offered

personal opinions on the credibility of its witnesses, the evidence, and the guilt of appellant. He does not cite to any specific instance of misconduct. Instead, he simply cites to the prosecutor's entire closing argument. From our review of the prosecutor's closing argument, we see no instances of such misconduct and, therefore, trial counsel can not be ineffective in this regard.

{¶ 43} Last, appellant argues that trial counsel should have requested a continuance after the amendment of his indictment. Specifically, on the day of trial, the state sought to amend his indictment to delete the word "purposely" from the murder charge.[5] Appellant's counsel did not object to the change and the trial court granted the amendment. Appellant does not dispute the amendment itself but instead claims that trial counsel should have asked for a continuance after the amendment so that he could have prepared a new defense for trial, which he argues could have been to request a jury instruction for involuntary manslaughter.

{¶ 44} As noted earlier, counsel's trial strategy was to attack the credibility of the state's witnesses and to argue that those witnesses were all lying and that appellant was not involved in Calloway's death because he was not there. The amendment did not impact trial counsel's strategy because appellant's intent was not part of that strategy. In light of this trial strategy, we cannot say that trial counsel acted deficiently by not requesting a continuance after the amendment. Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995).

### 3. Sentencing Issues

{¶ 45} Appellant specifically contends that trial counsel was ineffective for not arguing that his convictions for aggravated arson, murder, and kidnapping should merge for purposes of sentencing. We have already addressed this issue and concluded that his convictions would not merge for purposes of sentencing. Accordingly, trial counsel was not ineffective for failing to so argue. *State v. Moore*, 10th Dist. No. 96AP-1594 (Oct. 23, 1997).

---

[5] The offense of murder pursuant to R.C. 2903.02(B), for which appellant was indicted, does not contain the word "purposely."

{¶ 46} Appellant also contends that trial counsel failed to object to the trial court's failure to notify him of post-release control. Because the trial court did properly notify him of post-release control, trial counsel was not ineffective for failing to so object.

### 4. Conclusion

{¶ 47} For all these reasons, appellant has not demonstrated ineffective assistance of counsel. Accordingly, we overrule appellant's first assignment of error.

## III. Conclusion

{¶ 48} We overrule appellant's four assignments of error. In light of the state's conceded error in regards to the trial court's imposed sentence for appellant's firearm specifications, however, we affirm in part and reverse in part appellant's convictions, and we remand the matter for resentencing on those specifications.

*Judgment affirmed in part and reversed in part;*
*cause remanded with instructions.*

SADLER and DORRIAN, JJ., concur.