OPINION
{¶ 1} Bradley Marshall appeals from his conviction of one count of aggravated burglary in violation of R.C. 2911.11(A)(1). Prior to trial, Marshall moved to suppress the pre-trial identification of him by Mrs. Darlene Carter, her son Richard Hathcock, and Evelyn Lane. After a hearing was conducted, the trial court overruled Marshall's motion and subsequently Marshall entered a no contest plea to the charge. He assigns as error, the trial court's denial of his motion.
 {¶ 2} The burglary occurred at the residence of Mrs. Darlene Carter on Red Haw Road. Mrs. Carter's son, Richard Hathcock said he heard his grandmother, Evelyn Lane, scream and so he jumped out of bed and raced to the kitchen. Hathcock said he saw a short, stocky, black male standing in the kitchen facing his grandmother. He said the stranger had a scraggy beard and was wearing a brown earth tone shirt with a checkered design. Hathcock said the stranger froze when he saw him and stared directly at him. Hathcock said he told the man to leave and the man ran out the kitchen door toward the garage area. Hathcock said he then checked to see if his grandmother was all right, and then the suspect returned to the area of the dining room window and he exchanged words with the man.
 {¶ 3} Hathcock testified the kitchen was well illuminated. Hathcock said he called the police and informed the dispatch that the suspect was across the street knocking on a neighbor's door. Hathcock said the police arrived in about 7-10 minutes. Hathcock said he never lost sight of the suspect (Marshall) and when the police arrived he pointed him out for the police. Hathcock said the police apprehended Marshall and returned him to their house to see if he and his grandmother could identify Marshall as the suspect. Hathcock testified he and his grandmother identified Marshall from the living room and as Marshall stood outside the house some 25-35 feet away, Hathcock said neither he nor his grandmother hesitated in making the identification.
 {¶ 4} On cross-examination, Hathcock said he didn't remember what clothing Marshall was wearing except for the earth tone checkered shirt because he was staring at the suspect's face to see what he was going to do. Hathcock said he noticed Marshall's eyes were "glazed over" and he had a weird stench about him. Hathcock said Marshall had a black book bag when he returned shortly after leaving the house and before he was arrested.
 {¶ 5} Darlene Carter testified that as she was leaving to go to work at 6:00 a.m. she saw a stranger walk up her driveway. Mrs. Carter said as she was pulling her car out of the driveway she saw the individual crouch down by her garage. Mrs. Carter said she rolled the window down on her car and asked the individual what he was doing. The individual said he was hiding from his teacher and she noticed he had a backpack on his back. She said she also noticed a funny smell about him. She said she was about seven feet away from the individual and she described him as a short black stocky young man with short hair wearing a brown shirt. She testified she told the young man to leave her property and he did. Mrs. Carter said she was called at work and informed of the burglary and she immediately returned to her home to find the police with a suspect in his cruiser.
 {¶ 6} Mrs. Carter said the officer asked if she could identify the young man she saw earlier, and Mrs. Carter said she thought she could. Mrs. Carter said she stayed inside the house and when the officer removed Marshall from the cruiser she immediately identified him as the man she saw crouching beside her garage earlier that morning.
 {¶ 7} Evelyn Lane, age 87, testified she was awakened by some noise in her house on the morning of December 7, 2001. Mrs. Lane said she walked into the front room and saw an individual trying to force a television out the room window. Mrs. Lane said she asked the individual what he was doing and he mumbled something in reply. She said the individual grabbed her and took her ring off her finger and asked where her money was. Mrs. Lane said her grandson awoke when she screamed and when he entered the kitchen, the individual fled the house.
 {¶ 8} Officer Jack Simpson of the Dayton Police Department testified he responded on a report of a burglary in progress at the Red Haw address. Simpson said he spoke to Richard Hathcock who said the burglary suspect fled across the street and Hathcock pointed out the suspect for him. Simpson said the suspect matched the description given in the dispatch. Simpson said he stopped the suspect later identified as Marshall about fifty feet from the Red Haw address. Simpson said he arrested Marshall and placed him in the back of his cruiser. He said he then removed Marshall from his cruiser and Mr. Hathcock and Mrs. Carter identified him while they stood inside the residence and Marshall stood in the street in front of the cruiser. Simpson said neither witness had any hesitation in identifying Marshall.
 {¶ 9} In overruling Marshall's motion to suppress the witnesses' pre-trial identification of him, the trial court noted that each witness observed the defendant from a very short distance, each spoke with the defendant, and a relatively brief period elapsed between the encounters and the identification. The court found that under these circumstances, the identification of Marshall should not be suppressed because the identification was reliable.
 {¶ 10} Appellant argues that the trial court erred in not suppressing the post-arrest identification of him because the identification process was unreliable and resulted in a substantial likelihood of misidentification. The State argues that the witnesses' identifications of Marshall were not the product of suggestive police procedures but were the product of reliable observations by the witnesses.
 {¶ 11} Due process requires suppression of pre-trial identification of a suspect only if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. Neil v. Biggers
(1972), 409 U.S. 188, 196-97, 93 S.Ct. 375. To establish a due process violation, a defendant must prove that the out of court confrontation was "unnecessarily suggestive and conducive to irreparable mistaken identification." Stovall v. Denno (1967),388 U.S. 293, 302, 87 S.Ct. 1967. However, even where the identification procedure is suggestive, so long as the challenged identification itself is reliable, it is still admissible. Statev. Moody (1978), 55 Ohio St.2d 64, 377 N.E.2d 1008. See Mansonv. Brathwaite (1977), 432 U.S. 98, 114, 97 S.Ct. 2243, ("reliability is the linchpin in determining the admissibility of identification testimony").
 {¶ 12} In evaluating reliability of the identification, factors to be considered are: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, supra at 199; Moody, supra at 67. Initially, it is worth noting that police use of a show-up, without more, does not violate due process. Biggers,
supra at 198. Indeed, this Court has found that "[p]rompt on the scene show ups tend to insure the accuracy of the identification, involve a minimum intrusion and insure the prompt release of persons not identified." State v. Gilreath (June 19, 1992), Greene App. No. 91-CA-35 at *1.
 {¶ 13} Undoubtedly, the showing of one suspect to witnesses is suggestive. The central question is whether, under the totality of circumstances, the identification was reliable even though the confrontation procedure was suggestive. Neil v.Biggers, supra. In this matter, all three of the State's witnesses had a significant opportunity to view Marshall at or near the time of the crime. Mrs. Carter had an excellent opportunity to view Marshall and engaged in conversation with him to determine what he was doing on her property. Richard Hathcock encountered Marshall on two occasions once when he was inside the kitchen and once when he returned outside the house. Hathcock testified the lighting was good and he had no difficulty seeing Marshall's face. Hathcock kept his eye on Marshall and pointed him out for the police when they arrived. Mrs. Lane had a face to face encounter with Marshall inside the home and engaged in extensive conversation with him. All of the witnesses were certain of their identification of the defendant (although Mrs. Lane did not testify concerning her identification of Marshall, her grandson and Officer Simpson said she had no difficulty identifying him on the day of the burglary). The time between the crime and the confrontation was extremely short. Officer Simpson testified he did not prompt the witnesses in any way. Simpson testified Marshall fit the description given him by the dispatcher. He was wearing the black back pack as described by the witnesses.
 {¶ 14} Marshall has failed to demonstrate that the show up procedure used by the police was unnecessarily suggestive and conducive to an irreparable mistaken identification of him.Stovall v. Denno, supra. The trial court properly found the post-arrest identifications were reliable and should not be suppressed. The assignment of error is overruled.
 {¶ 15} The judgment of the trial court is Affirmed.
Fain, P.J., and Wolff, J., concur.