[Cite as *State v. George*, 2012-Ohio-3597.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                   :

    Plaintiff-Appellee                    :        C.A. CASE NO.    24889

v.                                              :        T.C. NO.    11CR2337

AARON J. GEORGE                                 :        (Criminal appeal from
                                                         Common Pleas Court)

    Defendant-Appellant                   :

                                                :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___10th___ day of ___August___, 2012.

. . . . . . . . . .

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

WILLIAM T. DALY, Atty. Reg. No. 0069300, 901 E. Central Avenue, P. O. Box 49054, Dayton, Ohio 45449
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}   Aaron J. George appeals from a judgment of the Montgomery County Court of Common Pleas, which found him guilty, on his no contest pleas, of six counts of aggravated robbery and six counts of kidnapping, each with a firearm specification, and sentenced him to an aggregate term of eight years in prison.   George asserts that the trial court erred in refusing to suppress identification testimony, because it was unduly suggestive.   For the reasons that follow, the judgment of the trial court will be affirmed.

I

{¶ 2}   On June 25, 2011, an armed robbery occurred at the Oregon Express Bar & Grill in Dayton; few details about the crime itself are contained in the record.   The detectives assigned to the case "develop[ed]" George as a suspect.   Accordingly, Detective Jamie Bullens prepared a six-photograph array that included a recent picture of George to show to witnesses; George's picture was in the top left position of the photo array. Detective Bullens printed out several color copies of the same photo array and used "blind administrators" (i.e., other detectives who were not familiar with the case or with George) to present the photo array to several witnesses.   Several of the witnesses identified George as the perpetrator of the robbery at the Oregon Express; others were unable to identify a suspect from the photo array.

{¶ 3}   George was indicted on six counts of aggravated robbery and six counts of kidnapping, each of which was a first degree felony and had a firearm specification.   George pled not guilty and filed a Motion to Suppress Identification Testimony, asserting that "the pretrial identification procedures were unnecessarily and impermissibly suggestive" and

violated his due process rights. The trial court held a hearing on the motion, at which three detectives testified for the State; George did not call any witnesses. The trial court overruled the motion to suppress.

{¶ 4} After his motion to suppress was overruled, George pled no contest to all counts in the indictment. The trial court found George guilty of all the charges and merged one count of kidnapping with each count of aggravated robbery. The court sentenced George to five years of imprisonment on each count of aggravated robbery, to be served concurrently, and imposed an additional three-year term on the firearm specifications. The court also imposed five years of postrelease control.

{¶ 5} George appeals from his conviction.

II

{¶ 6} George raises one assignment of error on appeal, which states:

**The identification procedure of the defendant was so unduly suggestive that it rendered the identification unreliable.**

{¶ 7} George claims that the photo array used by detectives in this case, in which he was identified by several witnesses to the robbery, was unduly suggestive because be was the only suspect pictured whose hair was braided in "cornrows." He contends that the identification evidence should have been suppressed.

{¶ 8} "Due process requires suppression of pre-trial identification of a suspect only if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." *State v. Marshall*, 2d Dist. Montgomery No. 19920, 2004-Ohio-778, ¶ 11, citing *Neil v. Biggers*, 409 U.S. 188, 196-97, 93 S.Ct. 375, 34

L.Ed.2d 401 (1972). "To warrant the suppression of identification testimony, the accused bears the burden of showing that the identification procedure was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification' and that the identification itself was unreliable under the totality of the circumstances." *State v. Poindexter*, 2d Dist. Montgomery No. 21036, 2007-Ohio-3461, ¶ 11, citing *Manson v. Braithwaite*, 432 U.S. 98, 106, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Biggers*; *State v. Broom*, 40 Ohio St.3d 277, 284, 533 N.E.2d 682 (1988).

{¶ 9}     When assessing a motion to suppress, the trial court is the finder of fact, judging both the credibility of witnesses and the weight of the evidence. *State v. Jackson*, 12th Dist. Butler No. CA2002-01-013, 2002-Ohio-5138, citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). An appellate court must rely on those findings and determine whether the court has applied the appropriate legal standard. *Id.,* quoting *State v. Anderson*, 100 Ohio App.3d 688, 691, 654 N.E.2d 1034 (4th Dist. 1995). When the trial court's ruling on a motion to suppress is supported by competent, credible evidence, an appellate court may not disturb that ruling. *Poindexter* at ¶ 10, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994).

{¶ 10}     At the suppression hearing, Detective Bullens testified that, after George was identified as a suspect and a recent picture of him was obtained by the police, he (Bullens) used a computer program to find five additional pictures of individuals with similar characteristics and to randomly place the photos in a photo array. According to Bullens, the suspect had worn a "dew rag" on his head during the robbery, and none of the witnesses had provided a description of his hair.

**{¶ 11}** Bullens printed several identical copies of the photo array, including the photospread instructions and witness signature pages; George's picture was located in the upper left corner of the array in "position one." Bullens then recruited two other detectives to serve as "blind administrators" and to accompany him on visits to witnesses to the armed robbery. The other detectives were unaware of the crime for which the photo array had been prepared, of the identity of the suspect, the description provided by any witnesses, and of the location of the suspect's photo in the photo array.

**{¶ 12}** Detective Cayce Cantrell visited several witnesses with Bullens. In each instance, Cantrell talked with the witness without Bullens and outside the presence of any other witnesses to the crime. One of the witness was not able to identify anyone from the photo array. Two witnesses believed that the perpetrator was in position one or two, but could not narrow their identification to one person. The last two witnesses to whom Cantrell showed the array identified George as the perpetrator of the robberies, with 90% and 80% certainty respectively. Detective Michael Galbraith accompanied Bullens to visit an additional witness. Galbraith also showed the photo array to the witness outside of Bullens's presence and the presence of any other witness. That person identified George as the perpetrator and was 90-95% certain of the identification.

**{¶ 13}** Aside from Bullens's testimony that none of the witnesses to the robbery had described the perpetrator's hair because he was wearing a "dew rag," no testimony was offered at the hearing about the perpetrator's or George's hair. In the photo array, George is the only person with cornrows, but all of the pictures depict men with hair very close to their heads.

**{¶ 14}** The trial court expressly found that Detectives Bullens, Cantrell, and Galbraith were "credible and believable," and it "incorporated" their versions of events as its factual conclusions. Based on the evidence presented, the trial court concluded that the State had complied with R.C. 2933.83, which sets forth minimum requirements for live lineup and photo lineup procedures, and that the detectives who served as "blind administrators" of the identifications had not recognized George or known that he was the suspect at issue.[1] The court also concluded that the identification procedure was not "overly suggestive" and that there was "no basis to order suppression of the photographic lineup identifications at issue."

**{¶ 15}** The detectives' accounts of the manner in which the photo identifications were conducted, the reported inability of the witnesses to the robbery to describe the hairstyle of the perpetrator, and the similar appearances of the men in the photo array supported the trial court's conclusion that the identifications were not impermissibly suggestive and did not give rise to a very substantial likelihood of irreparable misidentification. We will not indulge in speculation that the witnesses identified George because he was pictured with cornrows, when no evidence was presented to suggest that he stood out because of the cornrows or that the perpetrator of the offense wore cornrows. The trial court reasonably concluded that the photo array was not unduly suggestive.

**{¶ 16}** The assignment of error is overruled.

III

---

[1] Detective Cantrell had previously seen George's photograph in her capacity as the Crime Stoppers coordinator, but she testified that, when she viewed the photo array assembled by Detective Bullens, she did not recognize George. The trial court found this testimony to be credible.

**{¶ 17}** The judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, J. and FRENCH, J., concur.

(Hon. Judith L. French, Tenth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Michele D. Phipps
William T. Daly
Hon. Michael L. Tucker