[Cite as *State v. Lee*, 2016-Ohio-122.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-1009 |
| v. | : | (C.P.C. No. 13CR-4183) |
| Steven Lee, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on January 14, 2016

*Ron O'Brien,* Prosecuting Attorney, and *Valerie B. Swanson,* for appellee.

*Timothy Young,* Ohio Public Defender, and *Stephen A. Goldmeier,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Defendant-appellant, Steven Lee, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty pursuant to jury verdict of one count of aggravated robbery, in violation of R.C. 2911.01, one count of murder, in violation of R.C. 2903.02, and the firearm specifications attached to each count, in violation of R.C. 2941.145. Because (1) the trial court did not abuse its discretion by failing to merge the charges, and (2) Ohio's mandatory transfer statutes do not violate the Due Process Clause, the Equal Protection Clause, or the Eighth Amendment's prohibition against cruel and unusual punishment, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 6, 2013, the Juvenile Division of the Franklin County Court of Common Pleas, Division of Domestic Relations, filed an entry sustaining the state of

Ohio's motion to relinquish jurisdiction over defendant. The court noted that defendant was 16-years-old at the time the murder in question occurred, and that the court had found probable cause to believe that defendant committed the murder. As such, the court granted the state's motion, and ordered that the case be transferred to the General Division of the Franklin County Court of Common Pleas. On August 20, 2013, the state filed an indictment charging defendant with aggravated robbery, a felony of the first degree, aggravated murder, an unclassified felony, and murder, an unclassified felony, all with firearm specifications. Prior to trial, the court entered a nolle prosequi on the aggravated murder charge.

{¶ 3}   The events giving rise to the indictment occurred on April 26, 2013. That morning, the victim, Celestin Ganga, went to his friend Darrelle Howell's house. The victim told Howell that he was going to go to the store and would be right back. A short time later, Howell heard a noise that "[s]ounded like a firecracker," and the victim came "limping towards" him. (Tr., 183-84.) The victim said that "somebody tried to rob him," and that he "was shot." (Tr., 185.) A police officer arrived on the scene, and the victim told the officer that "three kids came up and shot him, one shot him." (Tr., 200.) The victim died from the gunshot wound to his abdomen. (Tr., 437.)

{¶ 4}   On the morning of April 26, 2013, defendant, E.T. and D.J., all juveniles, skipped school and were walking around their neighborhood together. According to E.T., the boys started talking about robbing somebody, because they had "nothing to do." (Tr., 452.) E.T. stated that they "all agreed to rob somebody." (Tr., 457.) D.J. confirmed that all three agreed to rob someone. (*See* Tr., 323-24.) The boys acquired a gun; it was black and approximately four to five inches long. (Tr., 455-56.) E.T. testified that defendant had provided the firearm to the group, but D.J. testified that they got the "gun from [a] dude." (Tr., 323, 455.) The boys first tried to rob a man pushing a lawn mower, but the man "didn't pay [the boys] no attention," he "just kept walking and ignored" them. (Tr., 458-59.)

{¶ 5}   The boys continued walking around looking for another individual to rob. The boys then spotted the victim sitting on a bench in Monroe Park. They walked up to him, and were standing approximately 12 to 15 feet away from him. (*See* Tr., 331.) According to E.T., D.J. initially had the gun, and he "walked up to the man and was trying

to rob the man, but the man wasn't giving him nothing." (Tr., 464.) Defendant and E.T. then walked up, and D.J. handed the gun to defendant in "a little exchange," but the man "had seen the gun." (Tr., 465-66.) D.J. explained that defendant said "I need that shit," to the victim, referring to the victim's money and marijuana. (Tr., 332.) The man on the bench said, " '[s]top playing with that gun,' " and then defendant "shot him." (Tr., 335.) Defendant, E.T., and D.J. all ran away immediately after the gun was fired.

{¶ 6}   E.T. and D.J. both testified that defendant shot the victim. The jury was informed during trial that both D.J. and E.T. had entered into agreements with the prosecutor's office, whereby the state agreed not to seek to transfer D.J.'s or E.T.'s criminal cases, which also resulted out of this incident, to adult court.

{¶ 7}   Defendant testified in his own defense. Defendant stated that he had no idea that E.T. and D.J. were planning on robbing someone, and that they never discussed anything about a robbery. Defendant explained that, as they walked into the park, D.J. walked up to the man on the bench and E.T. turned to defendant and said, "I'm about to rob that guy." (Tr., 844.) Defendant "tried to tell him not to do it, basically, like, chill out." (Tr., 852.) According to defendant, E.T. then approached the victim, asked for his stuff, pulled a gun out, and "that's when the shots were fired." (Tr., 853.) Defendant confirmed that E.T. "pulled the gun out at the bench." (Tr., 854.)

{¶ 8}   After hearing all the evidence, the jury returned verdicts finding defendant guilty of aggravated robbery, murder, and the firearm specifications. At sentencing, defense counsel asked the court to merge all of the charges and specifications. Counsel noted that she "spoke with the jury" after the trial, and reported that the jury informed her that "they convicted based on the complicity argument." (Tr., 1070.) The court concluded that "as a matter of law, the aggravated robbery and murder conviction [did] not merge for purposes of sentencing," and that pursuant to R.C. 2929.14(B)(1)(d), the court had to sentence defendant on both firearm specifications. (Tr., 1078.)

{¶ 9}   The court sentenced defendant to 5 years on the aggravated robbery charge, 15 years to life on the murder charge, and 3 years on each firearm specification. The court ordered that the sentences on the aggravated robbery and murder charges be served concurrently with each other, and that the sentences on the firearm specifications be

served consecutively to each other and to the sentences on the murder and aggravated robbery charges, for a total term of imprisonment of 21 years to life.

## II. ASSIGNMENTS OF ERROR

{¶ 10} Defendant appeals, assigning the following errors for our review:

> **[I.] The trial court erred when it failed to merge Mr. Lee's convictions arising from the same conduct, and committed with the same animus. R.C. 2941.25**

> **[II.] Mr. Lee's mandatory transfer to adult court pursuant to R.C. 2152.10(A)(1)(a) and 2152.12(A)(1)(a) violates his right to due process, to equal protection, and to be free from cruel and unusual punishment. Eighth and Fourteenth Amendments to the United States Constitution; Article I, Sections 2, 9, and 16 of the Ohio Constitution.**

## III. MERGER

{¶ 11} In his first assignment of error, defendant contends that the trial court erred in not merging the charges for sentencing.

{¶ 12} R.C. 2941.25, Ohio's multiple count statute, provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 13} R.C. 2941.25(A) allows only a single conviction for conduct that constitutes "allied offenses of similar import." In *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, the Supreme Court of Ohio instructed that we must ask the following three questions to determine whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25: (1) Were the offenses dissimilar in import or significance, (2) were they committed separately, and (3) were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions.

*Id.* at ¶ 31. "[T]wo or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 26.

{¶ 14} Defendant was charged with aggravated robbery and felony murder. R.C. 2911.01 defines aggravated robbery, and provides, in relevant part, that "[n]o person, in attempting or committing a theft offense * * *, or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * * (3) Inflict, or attempt to inflict, serious physical harm on another." R.C. 2903.02 defines the crime of felony murder, providing that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree." The aggravated robbery was the felony underlying defendant's felony murder conviction.

{¶ 15} Defendant contends that the convictions should merge because they "share the same import, because they are in fact linked; commission of the robbery [was] a required part of the commission of the felony murder, with acts of equal significance underlying both." (Appellant's Brief, 6.) Defendant further asserts that, as "[t]he jurors made clear to defense counsel that they did not believe that Mr. Lee was the shooter, only that he was present during the shooting," there was insufficient "evidence of a separate animus related to the murder charge, and the two charges should therefore have merged." (Appellant's Brief, 7-8.) We disagree.

{¶ 16} Defense counsel's statements regarding what the jurors told her were not evidence, and the record does contain evidence demonstrating that defendant was in fact the shooter. However, for purposes of the instant merger analysis, whether defendant was the principal offender or whether he was merely complicit in the robbery and murder is irrelevant. Under the principle of complicity or accomplice liability, an individual may be found guilty if he solicits, aids, abets or conspires with another individual to commit an offense and shares the criminal intent of an individual who commits the principal offense. *State v. Johnson,* 93 Ohio St.3d 240 (2001), syllabus; *State v. Moore,* 10th Dist. No. 10AP-10, 2010-Ohio-4322, ¶ 17. "[A] defendant charged with an offense may be

convicted of that offense upon proof that he was complicit in its commission, even though the indictment is 'stated * * * in terms of the principal offense' and does not mention complicity." *State v. Herring,* 94 Ohio St.3d 246, 251 (2002). Thus, "[s]ince an accomplice is punished as if he or she were a principal offender, a court, when determining the issue of merger, must necessarily consider the offenses the accomplice was found to have aided and/or abetted." *State v. Haller*, 3d Dist. No. 1-11-34, 2012-Ohio-5233, ¶ 71.

{¶ 17} In *State v. Albert*, 10th Dist. No. 14AP-30, 2015-Ohio-249, this court concluded that aggravated arson and felony murder premised on aggravated arson were not allied offenses. In *Albert*, the defendant poured gasoline on the victim, and his co-defendant lit a piece of paper on fire which fell onto the victim's lap. The victim died as a result of being set on fire. Addressing the merger issue, this court noted that, "[i]n considering each offense, courts look to determine whether excessive force was used to commit the underlying offense, which would indicate that the intent to kill was separate than the intent to commit the underlying offense." *Id.* at ¶ 27, citing *State v. Metcalfe*, 2d Dist. No. 24338, 2012-Ohio-6045, ¶ 15-16. We concluded that "the act of pouring gasoline on [the victim] and then lighting him on fire was far in excess of the force needed to commit aggravated arson." *Id.* at ¶ 28. Because the act of lighting the victim on fire was a force far in excess of the force needed to commit the aggravated arson, the evidence demonstrated that the defendant had "participated in an act with a separate animus to kill" the victim. *Id.* at ¶ 28.

{¶ 18} Similarly, here, the act of shooting Ganga in his abdomen was far in excess of the force required to commit the aggravated robbery. The aggravated robbery was complete when the boys pointed the gun at Ganga and demanded his belongings. Shooting Ganga was unnecessary to the commission of the aggravated robbery, and shooting Ganga in his abdomen at fairly close range particularly demonstrated a separate intent to kill. *See State v. Tibbs*, 1st Dist. No. C-100378, 2011-Ohio-6716, ¶ 43 (noting that, although the defendant's immediate motive "was the theft, at gunpoint, of Newell's drugs," the fact that defendant "shot Newell in the face and head from relatively close range demonstrated a specific intent to kill Newell, separate from the immediate motive of robbing him").

{¶ 19} Furthermore, the act of shooting Ganga was not in furtherance of the robbery, as the boys never actually deprived Ganga of any of his property. *Compare Metcalf* at ¶ 16 (finding a separate animus for the aggravated robbery and the murder, as the defendant shot Johnson at close range, and then "left the house and smoked crack in the alley," and afterward went "back into the house for Johnson's television"). As the act of shooting Ganga was an additional act of force well in excess of that necessary to commit the robbery, the intent to kill was separate from the intent to commit the robbery. Because defendant participated in an act which had a separate animus to kill the victim, the convictions for aggravated robbery and felony murder were not subject to merger. *Compare State v. Velez*, 8th Dist. No. 101303, 2015-Ohio-105, ¶ 11 (noting that involuntary manslaughter and aggravated robbery were not subject to merger as the "stabbing was an additional act of such excessive force that it went beyond being the same conduct necessary to rob the victim").

{¶ 20} Lastly, we note that the trial court did not err in refusing to merge the firearm specifications attached to the two principal offenses. When an offender is convicted of a felony and a firearm specification under R.C. 2941.145, R.C. 2929.14(B)(1)(a)(ii) requires the trial court to impose a three-year prison term on the offender. R.C. 2929.14(B)(1)(b) states that "[e]xcept as provided in division (B)(1)(g) of this section, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction." R.C. 2929.14(B)(1)(g) provides:

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

{¶ 21} Thus, because defendant was sentenced for the crimes of murder and aggravated robbery, R.C. 2929.14(B)(1)(g) required the trial court to sentence defendant on the two most serious specifications. *See State v. Isreal,* 12th Dist. No. CA2011-11-115, 2012-Ohio-4876, ¶ 71. As such, the trial court did not err in refusing to merge the two firearm specifications.

{¶ 22} Based on the foregoing, defendant's first assignment of error is overruled.

## IV. CONSTITUTIONALITY OF MANDATORY BINDOVER

{¶ 23} In his second assignment of error, defendant contends that Ohio's mandatory transfer laws in R.C. 2152.10 and 2152.12 are unconstitutional. The mandatory transfer, or mandatory bindover, statutes detail the conditions under which juvenile offenders may be transferred to adult court for prosecution. Juvenile courts have exclusive original jurisdiction to hear complaints alleging that a juvenile is a delinquent child by reason of having committed an offense that would be a crime if committed by an adult. *State v. Brown,* 10th Dist. No. 13AP-349, 2014-Ohio-314, ¶ 14, citing *State v. Lucas,* 10th Dist. No. 10AP-923, 2011-Ohio-3450, ¶ 19. A juvenile offender may not be tried as an adult unless the juvenile court relinquishes jurisdiction of the matter to an adult court. *State v. Hicks,* 10th Dist. No. 13AP-429, 2014-Ohio-1444, ¶ 8. R.C. 2152.12(A)(1)(a) provides that the juvenile court must transfer a juvenile's case to adult court if the complaint alleges that the child committed an act that would be considered murder if committed by an adult, and the "child was sixteen or seventeen years of age at the time of the act charged and there is probable cause to believe that the child committed the act charged."

{¶ 24} Defendant contends that the mandatory transfer laws unconstitutionally prohibit "the juvenile court from making an individualized determination of the appropriateness of the transfer of [a defendant's] case to adult court." (Appellant's Brief, 9.) Defendant asserts that the mandatory transfer laws violate due process, equal protection, and the prohibition against cruel and unusual punishment in the U.S. Constitution and the Ohio Constitution. Defendant failed to raise these constitutional arguments below and has thus waived them. Nonetheless, this court has discretion to consider a forfeited constitutional challenge to a statute. We may review the trial court

decision for plain error. *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 15-16.

{¶ 25} In *State v. J.T.S.*, 10th Dist. No. 14AP-516, 2015-Ohio-1103, this court addressed and rejected each of the constitutional arguments defendant now makes. Defendant asserts herein that the statutes violate the Due Process Clause, as they prohibit a trial court from making an individualized determination of culpability under the factors announced in *Kent v. United States,* 383 U.S. 541 (1966). In *J.T.S.*, we resolved the due process challenge as follows:

> In his second assignment of error, appellant argues that Ohio's mandatory transfer statute violates a juvenile defendant's right to due process of law.
>
> In *Anderson,* the juvenile offender argued that R .C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) violated due process inasmuch as the mandatory nature of the bindover prohibited juvenile courts from "making any individualized decision about the appropriateness of transferring particular cases to adult court." *Id.* at ¶ 64. In making this argument, the juvenile offender claimed that the failure to provide for an amenability hearing violated the holding of the United States Supreme Court in *Kent v. United States,* 383 U.S. 541 (1966). *Anderson* at ¶ 67. In *Anderson,* the Second District Court of Appeals distinguished *Kent* and held as follows:
> Anderson contends that mandatory transfer and Ohio's failure to provide for an amenability hearing violate the due process holding in *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), which outlined eight factors to be considered in transfer proceedings before a juvenile court orders bindover. *However, other appellate districts have rejected this argument, based on the fact that Kent involved discretionary, rather than mandatory transfer. See State v. Lane,* 11th Dist. Geauga No.2013-G-3144, 2014-Ohio-2010, ¶ 57, citing *State v. Kelly,* 3d Dist. Union No. 14-98-26, 1998 WL 812238, 19-20 (Nov. 18, 1998). Thus, "because the Kent factors were intended to address the problem of arbitrary decision-making and disparate treatment in discretionary bindover determinations, due process does not require use of these factors when the legislature has statutorily eliminated discretionary bindover determinations." *Id.*
> In addition, we have previously held that mandatory bindover does not violate due process. *State v. Agee,* 133 Ohio App.3d 441, 448-449, 728 N.E.2d 442 (2d Dist.1999), citing *State v. Ramey,* 2d Dist. Montgomery No. 16442, 1998 WL 310741

(May 22, 1998). In this regard, we reasoned in *Ramey* that "[b]ecause amenability to treatment as a juvenile is not an issue determinative of transfer when the juvenile court finds that the underlying offense is one that [the statute] defines as an offense of violence, the juvenile is not thereafter entitled to a hearing to determine his amenability to treatment. Thus, no due process violation is demonstrated by the lack of an 'amenability' hearing * * *."
*Id.* at ¶ 67-68.

In *Kelly,* the Third District Court of Appeals determined that an amenability hearing using the *Kent* factors is not a fundamental right. The court concluded that substantive due process did not prevent the General Assembly from removing the *Kent* factors from consideration where the juvenile is charged with certain serious offenses, "provided that removal is rationally related to a legitimate governmental purpose." *Id.* The court went on to hold that the mandatory bindover statute is rationally related to the legitimate governmental objective of deterring violent juvenile crime. *Id.*

(Emphasis sic.) *J.T.S.* at ¶ 39-41.

{¶ 26} Thus, for the reasons set forth in *J.T.S.* and the cases cited therein, we reject defendant's contention that R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) violate a juvenile offender's right to due process of law.

{¶ 27} Defendant next contends that Ohio's mandatory transfer provisions violate the Equal Protection Clause, as they treat similarly situated children differently based solely upon their age. Although defendant contends that there is little difference between children who are younger than 16 and those who are older than 16, defendant failed to present any empirical evidence below to support this contention. As such, we reject defendant's equal protection challenge for the same reasons stated in *J.T.S.*:

Appellant argues in his third assignment of error that R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) violate the Equal Protection Clause of both the United States and Ohio Constitutions inasmuch as the statutory bindover scheme creates a bright-line, age-based classification that is not rationally related to the state's legitimate objectives. The state acknowledges that where certain serious offenses are concerned, transfer is mandatory for those 16 or older, discretionary for offenders who are 14 or 15 years of age, and is not permitted at all for offenders who are less than 14 years of age.

The juvenile offender in *Anderson* made the very same equal protection argument that appellant makes herein. The *Anderson* court disposed of the argument as follows:

Although Anderson contends that there is little difference between children who are younger than 16 and those who are older than 16, he does not support this contention with any type of empirical evidence. In the absence of such evidence, we cannot find that the distinction the legislature made is unconnected to its aims. As the court in *Lane* observed, "the purpose of this legislation is to protect society and reduce violent crime by juveniles. * * * Contrary to appellant's argument, juveniles who are 14 or 15 are markedly different from those who are 16 or 17 in many ways, *e.g.,* in terms of physical development and maturity. * * * Thus, the legislature's decision to single out older juvenile homicide offenders, who are potentially more street-wise, hardened, dangerous, and violent, is rationally related to this legitimate governmental purpose."

*Id.* at ¶ 75, quoting Lane at ¶ 67.

Here, as was the case in *Anderson,* appellant did not raise the equal protection argument in the trial court, and, consequently, he submitted no empirical evidence in support of his equal protection argument. Moreover, we agree with the reasoning of the other appellate districts on this issue: that the General Assembly's decision to single out older juvenile homicide offenders, who are potentially more streetwise, hardened, dangerous, and violent, is rationally related to this legitimate governmental purpose of protecting society and reducing violent crime by juveniles. *Anderson; Lane.*

*J.T.S.* at ¶ 43-45.

{¶ 28} Lastly, defendant contends that the mandatory transfer laws violate the constitutional prohibition against cruel and unusual punishment. However, the mandatory bindover statutes address only whether a juvenile case must be transferred to adult court for adjudication, they do not address sentencing issues. *See State v. Mays,* 8th Dist. No. 100265, 2014-Ohio-3815, ¶ 47. As such, we reject defendant's cruel and unusual punishment challenge for the same reasons stated in *J.T.S.*:

The Eighth Amendment to the U.S. Constitution states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." In this instance, appellant received the mandatory prison term

for murder of 15 years to life. However, pursuant to R.C. 2967.13(A), a person sentenced to life imprisonment for murder becomes eligible for parole at the expiration of the minimum term. *State ex rel. Davis v. Cuyahoga Cty. Court of Common Pleas,* 8th Dist. No. 93814, 2010-Ohio-1066.

In *Anderson,* the Second District adopted the viewpoint of the Eleventh District Court of Appeals in *Lane,* stating " ' "[m]andatory bindover does not equate to punishment any more than the mere prosecution of an adult in the common pleas court constitutes punishment." ' " *Anderson* at ¶ 79, quoting *Lane* at ¶ 73, quoting *Quarterman,* 2013-Ohio-3606, at ¶ 16.[6] The *Lane* court rejected the Eighth Amendment argument as follows:

The prohibition against cruel and unusual punishment by its very terms applies only to punishments. The word "punishment" has been defined as follows: "In criminal law[, a]ny * * * penalty * * * or confinement inflicted upon a person by authority of the * * * sentence of a court, for some crime or offense committed by him * * *." Black's Law Dictionary 1398 (4th Ed. Rev.1968). Further, "[m]andatory bindover does not equate to punishment any more than the mere prosecution of an adult in the common pleas court constitutes punishment." *Quarterman, supra,* at ¶ 16 (J. Carr, concurring).

Because appellant's mandatory bindover was not a penalty or confinement inflicted on him pursuant to a sentence of the juvenile court, it was not a punishment, and appellant's mandatory bindover did not constitute cruel and unusual punishment.

*Id.* at ¶ 73-74.

For the reasons set forth in *Anderson,* we hold that R.C. 2152.12 does not mandate punishment, and, therefore, the statute does not violate the Eighth Amendment prohibition against cruel and unusual punishment. *See also Mays* at ¶ 47 (Ohio's mandatory bindover statutes do not violate the Eighth Amendment because they "do not govern the sentencing of juveniles, but instead govern whether a juvenile case must be transferred to adult court for adjudication"). Moreover, appellant has not cited any case law holding that the Eighth Amendment prohibits a mandatory life sentence, *with the possibility of parole,* for a juvenile convicted of murder.

(Emphasis sic.) (Footnote omitted.) *J.T.S.* at ¶ 47-49.

{¶ 29} Based on the foregoing, defendant's second assignment of error is overruled.

## V. DISPOSITION

{¶ 30} Having overruled defendant's first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*


SADLER and LUPER SCHUSTER, JJ., concur.

————————————