[Cite as *State v. Johnston*, 2016-Ohio-4553.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 15AP-512 |
| v. | : | (C.P.C. No. 13CR-6756) |
| Lonnie Johnston, II, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 23, 2016

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee.

**On brief:** *Clark Law Office and Toki M. Clark*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Lonnie Johnston, II, appeals a judgment of the Franklin County Court of Common Pleas which sentenced him to serve ten years in prison based on a jury verdict by which he was found guilty of aggravated robbery and felonious assault and on a bench verdict that followed finding him guilty of having a weapon while under disability. He argues that the trial court erred in ordering him to serve consecutive sentences for firearm specifications related to the aggravated robbery and felonious assault counts and in permitting the introduction of a photo array identification during trial. He also argues that his convictions are against the manifest weight of the evidence and not supported by legally sufficient evidence. Because we find each of Johnston's

assignments of error fall short, we overrule all of them and affirm the judgment of the trial court.

## I. FACTS AND PROCEDURAL POSTURE

{¶ 2} On December 27, 2013, a Franklin County Grand Jury indicted Johnston for aggravated robbery, felonious assault, and possessing a weapon while under disability. Both the aggravated robbery and felonious assault counts included specifications for possession and use of a firearm. Johnston pled "not guilty" on December 31, 2013. (Dec. 31, 2013 Plea Form.)

{¶ 3} On March 24, 2015, Johnston waived his right to a jury trial on only the weapon under disability charge. Shortly thereafter, on April 13, 2015, the trial began. At trial six witnesses testified: Cortez Harris (the victim), Robert Kamara (a fact witness), Corporal Michael Weiner (lead detective on the case), Detective James Plumb (assisting detective on the case), a Columbus Police Department patrol officer, and the landlord of the property where the events took place.

{¶ 4} Both Harris and Kamara testified that they had been spending time together on November 20, 2013, driving around and smoking some marijuana. Near in time to 6:00 p.m., Harris received a call from Johnston, a friend whom he had known for two or three years and regarded as a little brother, asking to meet up. With Harris at the wheel, Harris and Kamara drove to a residence at 2230 Aberdeen Avenue where Harris had met with Johnston on other occasions.

{¶ 5} Harris and Kamara differed about the exact sequence of events at this point. Harris testified, for example, that after they pulled into the driveway at 2230 Aberdeen Avenue, Johnston got in the car with them for a moment before returning to the house saying he forgot something. Kamara remembered no such incident. However, both Harris's and Kamara's testimony establish that, at some point, Johnston and another man (who has never been identified) got into the back seat of Harris's car. Johnston sat behind Harris (the driver) and toward the middle of the car. The other man sat behind Kamara.

{¶ 6} Harris testified that as the four sat talking in the driveway of 2230 Aberdeen Avenue, he began to feel that something was wrong about the situation. At this point, according to Harris, Johnston pulled out a gun and said, "Cuz, this is a robbery." (Apr. 13, 2015 Tr. Vol. 1 at 54.) Harris testified that Kamara ran but that he, Harris, reached toward the back seat to try to take away the gun. However, Johnston yanked the gun back

and fired.   Harris testified that when the shot hit him he lost feeling in his lower extremities and felt like he was floating on air, not sitting on anything.  The bullet, as it turned out, had entered Harris's back and lodged against his spine, causing permanent paralysis.

{¶ 7}   Harris explained that after shooting him in the back, Johnston and the other man got out of the car and went to the front passenger door which Kamara had left open when he escaped. They reached in and dragged Harris's paralyzed body across the passenger seat leaving bloody stains on both seats.  Harris testified that he got a good look at Johnston and the other man when they were in the car and the dome light was illuminated, as well as later when he lay on the ground paralyzed, and the two robbers went through his pockets and attempted to remove his jewelry.  The two men were in the process of attempting to remove Harris's earrings when the approaching sound of sirens caused them to flee.

{¶ 8}   Kamara's testimony was similar to that offered by Harris, except that Kamara, who was using Instagram on his cell phone when the robbery began, and who fled just as the shot was fired, never clearly saw which person had the gun, Johnston or the unidentified second man.  After Kamara fled, he watched for a few moments to see if Harris was still living.  However, he soon ran in search of help and borrowed the cell phone of a passerby in order to telephone the police.

{¶ 9}   Corporal Weiner testified that when he arrived at the scene, he interviewed Kamara, who gave him the name of the shooter as "Lonnie." (Apr. 15, 2015 Tr. Vol. 2 at 169.)  After speaking with Mifflin Township officers who were present at the scene (which was within Mifflin Township), Weiner developed a hypothesis that "Lonnie" referred to Lonnie Johnston, II.  He, therefore, obtained a photograph of Johnston and prepared a six-photograph array.  He delivered the photo array to Detective Plumb who was unaware that Johnston had been identified as a suspect.

{¶ 10} Detective Plumb testified that at the time he showed the photo arrays prepared by Corporal Weiner to Kamara and Harris, he did not know Johnston's name or what he looked like.  Detective Plumb also testified that he read the line-up instructions off the card to the witnesses.  He showed the photo line-up first to Kamara shortly before 9:00 p.m., and Kamara identified Johnston as one of the robbers.  He then showed it to

No. 15AP-512

Harris who also identified Johnston. Both Kamara and Harris repeated their identification of Johnston in court.

{¶ 11} Shortly after 5:00 p.m. on the final day of trial, the jury retired to deliberate. The following morning, at 11:33 a.m., the jury announced a verdict of "guilty" on all counts and specifications that had been submitted to it. (Apr. 15, 2015 Tr. Vol. 2 at 366-69.) Following the announcement of the jury's verdict, the trial court, based on the evidence it heard during the trial and stipulations to Johnston's prior record, additionally found Johnston guilty of possessing a weapon while under disability.

{¶ 12} On April 20, 2015, the trial court held a sentencing hearing. The defense conceded that the Ohio Revised Code permitted and might even have required that Johnston serve the weapon specifications consecutively, but the defense argued that the aggravated robbery and felonious assault counts should merge. The trial court ultimately did not merge any counts. It sentenced Johnston to serve two years for the aggravated robbery, four years for the felonious assault, three years for possessing a weapon while under disability, and three years for each of the two weapon specifications. The trial court permitted Johnston to serve each of the sentences on the three counts concurrently with each other but ordered Johnston to serve each of the two weapon specification enhancements consecutively to each other and consecutively to the other sentences in the case. Thus, the total prison term imposed was ten years.

{¶ 13} Johnston now timely appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 14} Johnston asserts three alleged errors for our review:

> [1.] THE VERDICT OF GUILTY IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF EVIDENCE.
>
> [2.] THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES PURSUANT TO R.C. §§2929.14.
>
> [3.] A TRIAL COURT COMMITS REVERSIBLE ERROR BY ALLOWING TESTIMONY ON PHOTO ARRAY IDENTIFICATION, WHEN THAT PHOTO ARRAY WAS NOT CONDUCTED BY A BLIND ADMINISTRATOR.

No. 15AP-512

## III. DISCUSSION

### A. First Assignment of Error–Sufficiency and Weight

{¶ 15} In his first assignment of error, Johnston alleges that his convictions were not supported by sufficient evidence and that they were against the manifest weight of the evidence. The Supreme Court of Ohio has "carefully distinguished the terms 'sufficiency' and 'weight' * * * declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus.

{¶ 16} Sufficiency is:

> "a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.

*Id.* at ¶ 11, quoting *Thompkins* at 386; *Black's Law Dictionary* 1433 (6th Ed.1990). "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 47, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 17} By contrast:

> Weight of the evidence concerns "the inclination *of the greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict * * * . Weight is not a question of mathematics, but depends on its *effect in inducing belief.*"

(Emphasis sic.) *Eastley* at ¶ 12, quoting *Thompkins* at 387; *Black's* at 1594. In manifest weight analysis, "the appellate court sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony." *Thompkins* at 388, quoting *Tibbs v. Fla.*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest

No. 15AP-512

miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 18} Although manifest weight is a different standard from sufficiency, because the evidence against Johnston does not come close to failing either measure of sufficiency or weight, we find it effective to analyze these assignments of error together.

{¶ 19} In Ohio, the offense of aggravated robbery is defined, in relevant part, as follows:

> (A) No person, in attempting or committing a theft offense * * * shall do any of the following:
>
> (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
>
> * * *
>
> (3) Inflict, or attempt to inflict, serious physical harm on another.

R.C. 2911.01(A)(1) and (3). At trial, both Kamara and Harris testified that Johnston told Harris something to the effect of, "Cuz, this is a robbery." (Apr. 13, 2015 Tr. Vol. 1 at 54; Apr. 15, 2015 Tr. Vol. 1A at 24.) Harris testified that both Johnston and his accomplice were trying to steal his jewelry and going through his pockets when the sound of sirens scared them off. It is undisputed that Harris was shot in the back.

{¶ 20} Felonious assault is set forth in Ohio by the following prohibition:

> (A) No person shall knowingly do either of the following:
>
> (1) Cause serious physical harm to another * * *;
>
> (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *.

R.C. 2903.11(A)(1) and (2). Kamara testified that someone in the back seat pulled out a gun, that Harris fought for it, and that a shot was fired. Harris testified that Johnston pulled out a gun, that Harris fought for it, and that Johnston pulled the gun back and shot him. As mentioned, it is undisputed that Harris was shot in the back.

{¶ 21} Finally, the offense of having a weapon while under a disability is provided by R.C. 2923.13(A)(2), which provides:

> [N]o person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person * * * has

been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

*See also* R.C. 2901.01(A)(9)(a). Harris testified that Johnston pulled out a gun, a chrome revolver, and ultimately shot him with it. The parties stipulated to Johnston's prior juvenile record.

{¶ 22} There was sufficient and weighty evidence on every element of each crime charged. In fact, at the trial, the defense did not even seek to challenge whether the crimes had taken place in the manner described. Rather, the defense offered at trial was one of mistaken identity–that Johnston was not the person who committed the offenses. However, Kamara and Harris both identified Johnston from photo arrays within hours of the shooting and both repeated that identification in court in the presence of the jury. Both Kamara and Harris testified that they knew Johnston prior to the shooting on November 20, 2013. Kamara had met Johnston approximately one a week earlier. Harris had known Johnston for years, seen him more times than he could estimate, and, prior to this circumstance, regarded him as a brother. Further, Detective Plumb testified that he read the instructions for conducting photo arrays verbatim to each witness and that he was, himself, unaware of Johnston's name or appearance when he administered the photo line-ups from the arrays Corporal Weiner had prepared.

{¶ 23} Johnston's first assignment of error is overruled.

## B. Second Assignment of Error–Whether the Trial Court Erred in Imposing Consecutive Sentences

{¶ 24} On the trial court's sentences on the jury's findings on the firearm specifications (that a firearm was used in the commission of the offenses), R.C. 2929.14(B)(1) provides, in relevant part as follows:

(a) [I]f an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in section * * * 2941.145 of the Revised Code, the court shall impose on the offender one of the following prison terms:

* * *

(ii) A prison term of three years if the specification is of the type described in section 2941.145 of the Revised Code that charges the offender with having a firearm on or about the offender's person or under the offender's control while

committing the offense and displaying the firearm, brandishing the firearm, indicating that the offender possessed the firearm, or using it to facilitate the offense[.]

{¶ 25} The same section limits the imposition of consecutive sentences on firearm specifications as follows:

Except as provided in division (B)(1)(g) of this section, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction.

R.C. 2929.14(B)(1)(b). However, the section also provides an exception to the limitation, which reads in relevant part:

If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are * * * aggravated robbery, [or] felonious assault, * * * and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court *shall* impose on the offender the prison term specified under division (B)(1)(a) of this section for *each* of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

(Emphasis added.) R.C. 2929.14(B)(1)(g).

{¶ 26} "In statutory construction, * * * the word 'shall' shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that [it] receive a construction other than [its] ordinary usage." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102 (1971), paragraph one of the syllabus; *State v. Schoenberger*, 10th Dist. No. 15AP-451, 2015-Ohio-4870, ¶ 8. Because Johnston was convicted of both aggravated robbery and felonious assault, each with firearm specifications, whether or not they were "felonies committed as part of the same act or transaction," the trial court was required by statute to impose separate and consecutive prison terms for both specifications. *State v. Lee*, 10th Dist. No. 14AP-1009, 2016-Ohio-122, ¶ 20-21; *State v. Dennison*, 10th Dist. No. 12AP-718, 2013-Ohio-5535, ¶ 86-90.

{¶ 27} Johnston's second assignment of error is overruled.

### C. Third Assignment of Error—Whether the Trial Court Erred in Admitting the Results of the Photo Array Line-up or in Failing to Give a Cautionary Instruction to the Jury

{¶ 28} Johnston argues that the photo array line-up was not conducted by a blind administrator and that, thus, a cautionary jury instruction was needed. A " 'blind administrator' " is defined in the Ohio Revised Code as a line-up administrator who "does not know the identity of the suspect." R.C. 2933.83(A)(2). Thus, Johnston is essentially arguing that the person who displayed the photo array to Kamara and Harris should not have known that he was a suspect. However, the testimony at trial showed that a blind administrator was indeed used.

{¶ 29} Corporal Weiner testified that he became aware of the possibility that Johnston was the shooter based on information provided by Kamara and Mifflin Township police officers when he arrived at the scene. Based on this he obtained a photograph of Johnston and prepared a six-photo array. He did not show the array to any witnesses, however. Instead, he delivered the photo array to Detective Plumb who was unaware that Johnston had been identified as a suspect.

{¶ 30} Detective Plumb confirmed that at the time he showed the photo arrays prepared by Corporal Weiner to Kamara and Harris, he did not know Johnston's name or what he looked like. Detective Plumb also testified that he read the line-up instructions off the card to the witnesses, including the admonition that the suspect "may or may not" be in the photo line-up. (Apr. 15, 2015 Tr. Vol. 2 at 230.) He showed the photo line-up first to Kamara shortly before 9:00 p.m., and Kamara identified Johnston as one of the robbers. He then showed it to Harris who also identified Johnston.

{¶ 31} Johnston argues that, having shown the photo array to Kamara who made an identification, Detective Plumb was no longer "blind" when he showed it subsequently to Harris. However a " 'blind administrator' " under the Ohio Revised Code is someone who "does not know the identity of the suspect." R.C. 2933.83(A)(2). For all Detective Plumb knew, Kamara could have been mistaken in identifying Johnston. The evidence does not support a conclusion that Detective Plumb "knew" that Johnston was a suspect after Kamara selected his photo as matching the identity of the shooter. We find no basis in the law to require that a single witness's selection from a line-up confers knowledge of who the suspect is such that the administrator is no longer "blind" within the meaning of

No. 15AP-512

R.C. 2933.83(A)(2); *see State v. George*, 2d Dist. No. 24889, 2012-Ohio-3597 (affirming a judgment of the trial court holding that photo line-ups were not unduly suggestive where two "blind administrators" each showed the photo arrays to multiple witnesses). The record does not support a conclusion that the line-up in content or process was suggestive or unreliable. Further, both witnesses knew Johnston prior to the incident and, therefore, could have identified him without the photo array; thus, any perceived irregularity would be harmless.

{¶ 32} Johnston's third assignment of error is overruled.

**IV. CONCLUSION**

{¶ 33} Finding no error on the part of the trial court and that Johnston's conviction on each count was amply supported by the evidence adduced at trial, we overrule each of Johnston's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and LUPER SCHUSTER, JJ., concur.