OPINION
{¶ 1} Defendant-appellant, Marcus L. Sullivan, was indicted on two counts of attempted murder, three counts of felonious assault, one count of improperly discharging a firearm at or into a habitation or in a school safety zone and one count of having a weapon while under disability. All the counts, except having a weapon while under disability, carried firearm specifications. After a jury trial, appellant was found guilty of all counts. The weapon under disability charge was tried to the court and the trial court found appellant guilty on that count. Appellant was sentenced to two five-year *Page 2 
sentences on the attempted murder counts, a three-year sentence on one felonious assault count and it was ordered that these counts to run consecutive to each other and consecutive to one three-year specification for using a gun in committing the offense. The court imposed two-year sentences on each of the remaining counts and ordered that they run concurrent to each other and concurrent to the attempted murder and felonious assault counts. The total sentence imposed was 16 years.
 {¶ 2} Appellant filed a notice of appeal and raised the following assignments of error:
 I. The evidence was insufficient to support a finding of guilt.
 II. The verdict was against the manifest weight of the evidence.
 {¶ 3} The indictment was the result of events occurring on March 10, 2006. The first witness to testify was Mattie Parnell. On that date, Parnell was 17-years old and living with her aunt on Cleveland Avenue. She was getting ready to leave for work and her aunt asked her to retrieve her cousin's shoes off the mantel in the front room of the house. Parnell heard gunshots, realized she had been shot and yelled for her aunt. She was taken to OSU hospital where she spent six days. The bullet was removed on June 22, 2006.
 {¶ 4} Kimberly Thomas, Parnell's aunt, testified that Parnell was living with her and her children on March 10, 2006. Thomas did not hear any shots but heard Parnell calling her. She called 9-1-1 and the ambulance took Parnell to the hospital. The police found a bullet hole in the front door.
 {¶ 5} Several police officers testified regarding the police investigation. The crime scene search unit found the bullet hole in the door and determined that the shots *Page 3 
may have been fired from the parking lot across the street. In the parking lot, five 9mm shell casings were found.
 {¶ 6} Curtis Holman testified that on March 10, 2006, he was driving with his friend, Marcus Wellman, north on Cleveland Avenue. They stopped at the red light at Cleveland and 11th Avenue. They saw "Sparks," who he identified as appellant, in another car heading north. Appellant kept looking back at them. Holman and Wellman laughed at appellant because he was "funny looking." (Tr. at 143.) Appellant sped off. When Holman and Wellman approached the intersection of Cleveland and Cordell, Holman saw appellant on the sidewalk with two guns in his hands and then Holman heard gunshots. He ducked, and when he looked up, he had to swerve to avoid hitting a parked car and his right front tire went flat. He drove to Wellman's house nearby and told the police it was "Sparks" who fired the shots. The police showed him a picture of appellant and he identified appellant as the shooter.
 {¶ 7} Wellman testified to substantially the same facts as Holman. However, Wellman was not as certain in his identification of appellant as the shooter because he heard the shots and ducked. He testified that the person shooting looked similar to appellant, whom he had seen at the red light. (Tr. at 171.)
 {¶ 8} The crime scene search unit also inspected the front tire on Holman's car. No bullet was recovered from the tire but it was "shredded." (Tr. at 106.) Officers showed Holman and Wellman a photo of appellant after they had told them the shooter was "Sparks" because the nickname "Sparks" is associated with appellant. Holman and Wellman positively identified appellant as the shooter from the picture. (Tr. at 191.) Police officers looked for appellant and the car. The car was found parked at an *Page 4 
apartment complex and a male fitting appellant's description entered the car. After the car was stopped, police found a semiautomatic pistol in the pants pocket of the driver, who was appellant's friend, Jamil Peterson.
 {¶ 9} The police crime laboratory found that the five shell casings were fired by the pistol found on Peterson but the bullet recovered from Parnell was not. No fingerprints were recovered from the pistol but it was operable and in good operating condition.
 {¶ 10} By the first assignment of error, appellant contends that the evidence was insufficient to support a finding of guilt. The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 11} Appellant argues that the evidence was insufficient to support the guilty finding of attempted murder and felonious assault because evidence of the required mental states was missing. R.C. 2923.02
provides that no person shall purposely engage in conduct that if successful would result in the offense of murder. Murder is defined as purposely causing the death of another. Thus, in order to convict appellant of attempted murder, the evidence had to be sufficient to prove beyond a reasonable doubt that appellant purposely engaged in conduct that, if successful, would result in the purposeful killing of another person. State v. Waddell (Aug. 15, 2000), Franklin App. *Page 5 
No. 99AP-1130, citing State v. Fox (1981), 68 Ohio St.2d 53, 55. Appellant argues that the evidence he acted purposely is absent.
 {¶ 12} R.C. 2901.22(A) provides that a person acts purposely, "when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." Specific intent to attempt to cause the death of another may be inferred from the circumstances, including use of a deadly weapon in a manner calculated to destroy life or cause great bodily harm. State v. Farris (June 26, 1981), Lucas App. No. L-79-360. "Intent need not be proven by direct testimony." State v. Stallings (2000), 89 Ohio St.3d 280, 290.
 {¶ 13} In this case, appellant was seen firing two guns and the evidence provided he fired at least six shots since five shell casings were found in the parking lot and a bullet from a second gun hit Parnell. The evidence also supports the finding that appellant shot and hit the front tire of Holman's car. "The act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." State v. Sevilla, Franklin App. No. 06AP-954,2007-Ohio-2789, at ¶ 10. An accused's specific intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrumentality, the use of which is reasonably likely to produce death. Waddell, supra, citing State v. Mackey (Dec. 9, 1999), Cuyahoga App. No. 75300. Thus, the evidence was sufficient to find that appellant had the specific intent to attempt to cause the death of another. *Page 6 
 {¶ 14} Appellant also argues that the evidence was insufficient to support a conviction of felonious assault against Parnell in the context of this case. A conviction of felonious assault requires proof beyond a reasonable doubt that the defendant knowingly caused serious physical harm to Parnell. R.C. 2903.11(A)(1). Appellant argues that evidence of the culpable mental state of knowingly was absent, because even though he concedes that injury is possible in such circumstances, there was nothing presented that injury would probably occur.
 {¶ 15} R.C. 2901.22(B) defines knowingly as "regardless of purpose, when [a person] is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Serious physical harm includes any harm carrying a substantial risk of death, any harm causing permanent disfigurement or temporary substantial disfigurement, any harm involving acute pain resulting in substantial suffering, and/or any harm involving prolonged or intractable pain. R.C. 2901.01(A)(5).
 {¶ 16} As discussed, the jury could reasonably infer from the evidence and circumstances that by the act of firing the gun appellant had the specific intent to attempt to cause the death of another, and such mental state necessarily includes appellant having the knowledge that serious physical harm would probably result from his actions. R.C.2901.22(E). Not only that, but the jury could reasonably infer that firing two guns at Holman and Wellman would probably cause serious physical harm. Death or great bodily harm is a natural and probable consequence of firing a gun at a person. Sevilla, supra, at ¶ 10. "It is a fundamental principle that a person is presumed *Page 7 
to intend the natural, reasonable and probable consequences of his voluntary acts." State v. Johnson (1978), 56 Ohio St.2d 35, 39.
 {¶ 17} Appellant's intent directed at Holman and Wellman is sufficient for Parnell. Under the doctrine of "transferred intent," the "culpability of a scheme designed to implement the calculated decision to kill is not altered by the fact that the scheme is directed at someone other than the actual victim." State v. Solomon (1981),66 Ohio St.2d 214, 218. "The doctrine of transferred intent provides that where an individual is attempting to harm one person and as a result accidentally harms another, the intent to harm the first person is transferred to the second person and the individual attempting harm is held criminally liable as if he both intended to harm and did harm the same person." State v. Crawford, Franklin App. No. 03AP-986,2004-Ohio-4652, at ¶ 14, citing State v. Mullins (1992),76 Ohio App.3d 633, 636. Thus, the fact the Holman and Wellman were not harmed, but Parnell was injured, does not alter appellant's legal responsibility.State v. Richey (1992), 64 Ohio St.3d 353, 364. Thus, the evidence is sufficient to find appellant had the required mental state for the commission of the crimes. Appellant's first assignment of error is not well-taken.
 {¶ 18} By the second assignment of error, appellant contends that the verdict was against the manifest weight of the evidence. The test for determining whether a conviction is against the manifest weight of the evidence differs somewhat from the test as to whether there is sufficient evidence to support the conviction. With respect to manifest weight, the evidence is not construed most strongly in favor of the prosecution, but the court engages in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence which could convince a reasonable trier of *Page 8 
fact of appellant's guilt beyond a reasonable doubt. See State v.Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence
sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's [Law Dictionary (6th Ed.1990)] at 1594).
Thompkins, at 387.
 {¶ 19} Appellant argues that the evidence supporting his identification was against the manifest weight of the evidence. Appellant argues that the only witness to testify that appellant was firing the shots was Holman and since he could not testify as to what appellant was wearing, his credibility is questionable. Wellman testified that he saw appellant in the area of Cleveland Avenue and Cordell but he heard shots and ducked. (Tr. at 170.) Later, he stated that the shooter looked similar to appellant but he was not 100 percent sure it was appellant. (Tr. at 175.) Since Peterson was driving the car and the weapon was recovered from him, not appellant, and others had been seen driving the car, which was registered to appellant's father, appellant contends that the convictions were against the manifest weight of the evidence.
 {¶ 20} Both Holman and Wellman testified that appellant was driving the car when they were stopped at the light at Cleveland Avenue and 11th Avenue. Holman testified that he and Wellman laughed at appellant because he was funny looking. Then appellant sped off and they saw him several blocks later in the parking lot. Holman *Page 9 
testified he saw appellant with two guns and Wellman also identified appellant, although he was less sure about the identification on cross-examination. The angle of the bullet hole in the door of Parnell's house was in line with the area identified by Holman and Wellman as the location of the gunman as well as the five shell casings found in the parking lot. Peterson was appellant's friend. There is sufficient competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt.
 {¶ 21} Finally, appellant argues that the judgment is against the manifest weight of the evidence because his mental state was that of recklessly, and he could only be found guilty of assault, rather than felonious assault or attempted murder. R.C. 2901.22(C) defines recklessly as "[a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." As discussed in the first assignment of error, the jury could reasonably infer from the evidence and circumstances that appellant had the specific intent to attempt to cause the death of another, and such mental state necessarily includes appellant having the knowledge that serious physical harm would probably result from his actions. Not only that, but the jury could reasonably infer that firing two guns at Holman and Wellman would probably cause serious physical harm, thus appellant's argument is without merit. Appellant's second assignment of error is not well-taken. *Page 10 
 {¶ 22} For the foregoing reasons, appellant's two assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 BROWN and TYACK, JJ., concur. BOWMAN, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1