[Cite as *State v. Sullivan*, 2017-Ohio-2943.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-94 |
| v. | : | (C.P.C. No. 06CR-3670) |
| Marcus L. Sullivan, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 23, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee.

**On brief:** *Marcus L. Sullivan*, pro se.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Marcus L. Sullivan, appeals a decision entered on January 24, 2017 by the Franklin County Court of Common Pleas denying his motion for resentencing. Because we find that the trial court sufficiently notified Sullivan of requirements for post-release control following his prison sentence there is no need for resentencing and we affirm the judgment of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On May 12, 2006, Sullivan was indicted for two counts of attempted murder, three counts of felonious assault, one count of discharging a firearm into a habitation (each with an accompanying firearm specification), and one count of possessing a weapon while under a disability. (May 12, 2016 Indictment.) On January 3, 2007 trial began.

{¶ 3} We stated the factual background and evidence in Sullivan's original appeal:

No. 17AP-94

The indictment was the result of events occurring on March 10, 2006. The first witness to testify was Mattie Parnell. On that date, Parnell was 17-years old and living with her aunt on Cleveland Avenue. She was getting ready to leave for work and her aunt asked her to retrieve her cousin's shoes off the mantel in the front room of the house. Parnell heard gunshots, realized she had been shot and yelled for her aunt. She was taken to OSU hospital where she spent six days. The bullet was removed on June 22, 2006.

Kimberly Thomas, Parnell's aunt, testified that Parnell was living with her and her children on March 10, 2006. Thomas did not hear any shots but heard Parnell calling her. She called 9-1-1 and the ambulance took Parnell to the hospital. The police found a bullet hole in the front door.

Several police officers testified regarding the police investigation. The crime scene search unit found the bullet hole in the door and determined that the shots may have been fired from the parking lot across the street. In the parking lot, five 9mm shell casings were found.

Curtis Holman testified that on March 10, 2006, he was driving with his friend, Marcus Wellman, north on Cleveland Avenue. They stopped at the red light at Cleveland and 11th Avenue. They saw "Sparks," who he identified as appellant, in another car heading north. Appellant kept looking back at them. Holman and Wellman laughed at appellant because he was "funny looking." (Tr. at 143.) Appellant sped off. When Holman and Wellman approached the intersection of Cleveland and Cordell, Holman saw appellant on the sidewalk with two guns in his hands and then Holman heard gunshots. He ducked, and when he looked up, he had to swerve to avoid hitting a parked car and his right front tire went flat. He drove to Wellman's house nearby and told the police it was "Sparks" who fired the shots. The police showed him a picture of appellant and he identified appellant as the shooter.

Wellman testified to substantially the same facts as Holman. However, Wellman was not as certain in his identification of appellant as the shooter because he heard the shots and ducked. He testified that the person shooting looked similar to appellant, whom he had seen at the red light. (Tr. at 171.)

The crime scene search unit also inspected the front tire on Holman's car. No bullet was recovered from the tire but it was "shredded." (Tr. at 106.) Officers showed Holman and Wellman a photo of appellant after they had told them the

No. 17AP-94

shooter was "Sparks" because the nickname "Sparks" is associated with appellant. Holman and Wellman positively identified appellant as the shooter from the picture. (Tr. at 191.) Police officers looked for appellant and the car. The car was found parked at an apartment complex and a male fitting appellant's description entered the car. After the car was stopped, police found a semiautomatic pistol in the pants pocket of the driver, who was appellant's friend, Jamil Peterson.

The police crime laboratory found that the five shell casings were fired by the pistol found on Peterson but the bullet recovered from Parnell was not. No fingerprints were recovered from the pistol but it was operable and in good operating condition.

*State v. Sullivan*, 10th Dist. No. 07AP-247, 2008-Ohio-391, ¶ 3-9.

{¶ 4} Following trial, on January 10, 2007 and before the jury announced its verdict, the trial court found Sullivan guilty of the weapon under disability count (for which Sullivan had waived jury). (Jan. 10, 2007 Verdict Tr. at 308-09; Jan. 11, 2007 Bench Verdict Form.) Later the same day, the jury found Sullivan guilty of all other counts and specifications. (Jan. 10, 2007 Verdict Forms.)

{¶ 5} The trial court held a sentencing and plea hearing on February 21, 2007 at which it took guilty pleas in three other cases pending against Sullivan and then sentenced him on all the cases. (Feb. 21, 2007 Sentencing Tr. at 2-3, filed May 7, 2007.) In connection with the guilty pleas on the other cases the trial court advised Sullivan that the Parole Board could choose to place him on post-release control for up to three years. (Feb. 21, 2007 Sentencing Tr. at 10.) The trial court did not otherwise orally mention post-release control during the sentencing hearing. Both the judgment entry and a notice (which Sullivan signed) contained language that a mandatory five-year period of post-release control would be imposed on Sullivan but both included language that oral notice of the five years had been given to Sullivan. (Feb. 26, 2007 Notice; Feb. 26, 2007 Jgmt. Entry at 2.) In total, the trial court sentenced Sullivan to 16 years in prison, including three years of mandatory imprisonment. (Feb. 26, 2007 Jgmt. Entry at 2.)

{¶ 6} On June 21, 2016 Sullivan filed a motion for resentencing based on the trial court's failure to orally advise him of the mandatory five-year term of post-release control. (June 21, 2016 Mot. for Resentencing.) The trial court denied the motion on January 24,

No. 17AP-94

2017. (Jan. 24, 2017 Decision & Entry Denying Mot. for Resentencing.) Sullivan now appeals the denial.

## II. ASSIGNMENT OF ERROR

{¶ 7} Sullivan presents a single assignment of error for review:

> The trial court failed to properly impose Post Release Control pursuant to R.C.2967.28 by failing to impose any mandatory post release control in the above case, the trial court's imposition does not include any Mandatory Post release control as required by Ohio Revised Code R.C.2967.28.

## III. DISCUSSION

{¶ 8} R.C. 2967.28 requires (and required at the time of Sullivan's sentencing) that a person such as Sullivan who is convicted of a first-degree felony is subject to a five-year period of post-release control. R.C. 2967.28(B)(1). As it stood at the time of Sullivan's plea and sentencing in February 2007, R.C. 2929.19(B) required notice to the offender regarding post-release control as follows:

> (3) [I]f the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:
>
> * * *
>
> (c) Notify the offender that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the first degree * * * ;
>
> * * *
>
> (e) Notify the offender that, if a period of supervision is imposed following the offender's release from prison, as described in division (B)(3)(c) or (d) of this section, and if the offender violates that supervision or a condition of post-release control imposed under division (B) of section 2967.131 of the Revised Code, the parole board may impose a prison term, as part of the sentence, of up to one-half of the stated prison term originally imposed upon the offender.

R.C. 2929.19(B)(3)(c) and (e). In the event an offender is not properly sentenced as subject to a period of post-release control, that portion of the sentence is void and subject

No. 17AP-94

to correction at any time irrespective of the principles of res judicata or law of the case doctrine. *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, ¶ 27, 30; *accord State v. Billiter*, 134 Ohio St.3d 103, 2012-Ohio-5144, ¶ 7; *see also State v. Schleiger*, 141 Ohio St.3d 67, 2014-Ohio-3970, ¶ 15 (holding that "if a court improperly imposes post release control on a sentence imposed on or after July 11, 2006, it may correct the sentence in accordance with the procedures set forth in R.C. 2929.191, which provides that a court must hold a hearing before issuing the correction. R.C. 2929.191(C)").

{¶ 9} According to the law of this district, a trial court's compliance with these statutes need not be mechanically perfect in order to avoid reversal.

> In our recent cases, we have " 'applied a "totality of the circumstances" test to determine whether or not the defendant was properly notified of post-release control.' " *State v. Cockroft*, 10th Dist. No. 13AP-532, 2014-Ohio-1644, quoting *State v. Boone*, 10th Dist. No. 11AP-1054, 2012-Ohio-3653, ¶ 25, 975 N.E.2d 546, quoting *State v. Williams*, 10th Dist. No. 10AP-1135, 2011-Ohio-6231, ¶ 23. Using that approach, we have concluded that " 'the trial court sufficiently fulfilled its statutory obligations when, taken as a whole, its oral and written notifications, including those at the sentencing hearing, properly informed the defendant of post-release control.' " *Cockroft* at ¶ 14, quoting *State v. Wilcox*, 10th Dist. No. 13AP-402, 2013-Ohio-4347, ¶ 4.

*State v. Holloman*, 10th Dist. No. 14AP-419, 2014-Ohio-5763, ¶ 12. In particular, this Court has previously held that although a defendant must be notified of post-release control during sentencing there is no specific requirement that such notification be oral.[1] *State v. Easley*, 10th Dist. No. 10AP-505, 2011-Ohio-2412, ¶ 12. Thus, a proper written notice, if given at the time of sentencing, can be sufficient. *Id.* at ¶ 11-22; *see also State v. Maser*, 10th Dist. No. 15AP-129, 2016-Ohio-211, ¶ 10-16; *State v. Albert*, 10th Dist. No. 14AP-30, 2015-Ohio-249, ¶ 30-31.

---

[1] We do note, however, that consistent with the purpose of notice, whatever form the notice takes should be reasonably calculated to actually notify the offender of the relevant post-release control information. *Record Publishing Co. v. Kainrad*, 49 Ohio St.3d 296, 301 (1990), quoting *Walker v. Hutchinson*, 352 U.S. 112, 115 (1956) ("notice, as a part of general constitutional law, requires that '* * * if feasible, notice must be reasonably calculated to inform the parties of proceedings which may directly and adversely affect their legally protected interests' ").

No. 17AP-94

{¶ 10} In this case Sullivan signed a written notice as follows:

The Court hereby notifies the Defendant as follows:

Post-Release Control:

After you are released from prison you (will, ~~may~~) have a period of post-release control for __5__ years following your release from prison. If you violate post-release control sanctions imposed upon you, any one or more of the following may result:

(1) The Parole Board may impose a more restrictive post-release control sanction upon you, and

(2) The Parole Board may increase the duration of the post-release control subject to a specified maximum, and

(3) The more restrictive sanction that the Parole Board may impose may consist of a prison term, provided that the prison term cannot exceed nine months and the maximum cumulative prison term so imposed for all violations during the period of post-release control cannot exceed one-half of the stated prison term originally imposed upon you, and

(4) If the violation of the sanction is a felony, you may be prosecuted for the felony and, in addition to any sentence it imposes on you for the new felony, the Court may impose a prison term, subject to a specified maximum, for the violation.

(Feb. 26, 2007 Notice.) The date line next to Sullivan's signature is blank and it is not clear from the face of the form whether he signed on February 21, 2007 at sentencing. *Id.* However, the notice of appellate rights and the sentencing disposition sheet are both signed and dated February 21, 2007 and all were filed on February 26, 2007. (Feb. 26, 2007 Certificate; Feb. 26, 2007 Disposition Sheet.) The trial court's written judgment entry (also filed on February 26, 2007) includes the following language: "[a]fter the imposition of sentence," the trial court notified Sullivan "of the applicable period of **5 years mandatory** post-release control pursuant to R.C. 2929.19(B)(3)(c), (d), and (e)." (Emphasis sic.) (Feb. 26, 2007 Jgmt. Entry at 2.) Under the circumstances, based on prior case law, we conclude that Sullivan was sufficiently notified of the post-release control that would be applicable to him. *See Maser* at ¶ 10-16; *Albert* at ¶ 30-31; *Easley* at ¶ 11-22.

No. 17AP-94

{¶ 11} Sullivan's sole assignment of error is overruled.

## IV. CONCLUSION

{¶ 12} R.C. 2929.19 requires that felony offenders be notified about the term of post-release control they will or may receive following imposition of a related prison sentence. It does not require that the notice be in any particular medium, but it should be reasonably calculated to actually notify the felony offender. Here, there was no evidence of any circumstance that would have rendered written notice ineffective and both the judgment entry and a form that Sullivan signed notified him that he would be subject to a mandatory five-year period of post-release control following release from prison. The notice Sullivan received was sufficient and we therefore overrule his sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas on his motion for resentencing.

*Judgment affirmed.*

BROWN and KLATT, JJ., concur.

———————————